### In re FIDDLER'S WOODS BOND-HOLDERS LITIGATION.

Civ. A. No. 83–2340.

United States District Court,
E.D. Pennsylvania.

July 24, 1984.

Nicholas E. Chimicles, R. Bruce McNew, Greenfield, Chimicles & Lewis, Haverford, Pa., Sherrie R. Savett, Gary E. Cantor, Berger & Montague, P.C., Philadelphia, Pa., for plaintiffs.

Ralph W. Brenner, John W. Frazier, IV, John E. Caruso, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant Price Waterhouse & Co.

## OPINION

LUONGO, Chief Judge.

This class action litigation arose from the default on $33.1 million in bonds issued for the construction of Fiddler's Woods, a life-care community for the elderly Jewish population of Philadelphia and surrounding areas. Plaintiffs have alleged violations of the federal securities laws, controlling person liability under the federal securities law, common law fraud, and reckless or negligent misrepresentation.

On May 25, 1984, I certified a plaintiff class consisting of all purchasers of the bonds from May 22, 1981, the date the Preliminary Official Statement for the bond sale was issued, until November 1, 1982 when the project's financial difficulties were publicly disclosed. The plaintiffs have sued a variety of individuals and corporations including: Jewish Retirement Homes (J.R.H.), a non-profit corporation organized to own and operate Fiddler's Woods; Arthur Kaplan, a member of and secretary to the Board of J.R.H.; Sage Development Corporation which contracted with J.R.H. to plan, construct, and initially market Fiddler's Woods; Sage Management Corporation, an affiliate of Sage Development, which was to manage Fiddler's Woods; Robert Berman, the controlling person and principal of Sage Management and Sage Development; Blyth Eastman Paine Webber, Incorporated and Herbert J. Sims & Co., Inc., the lead underwriters of the bonds; Opinion Research Corporation which prepared the "Demand Study" in the Official Statement; and Price Waterhouse & Company (P.W.) which prepared the financial forecast report appended to the Official Statement.

Currently before me is defendant Price Waterhouse's Motion to Dismiss for failure to plead the circumstances of fraud with particularity as required by Fed.R.Civ.P. 9(b).[1] Because several of the allegations against P.W. in the present complaint allege fraud with adequate particularity and several other allegations are deficient, I will grant defendant's motion in part but will do so with leave to plaintiffs to file an amended complaint to cure the deficiencies.

A short history of the Fiddler's Woods project will be helpful in understanding the allegations in question. On June 1, 1981, $33,155,000 of First Mortgage Gross Revenue Bonds were offered for sale to finance the construction, furnishing and equipping, and marketing of a life-care facility for elderly Jewish residents. The bonds were sold pursuant to an Official Statement which was prepared to provide information to prospective purchasers. Fiddler's Woods was designed to provide a variety of services to the elderly in both its residential and health care sections. The accommodations were to include 300 living units, central dining, recreational, health care, and administrative areas, and a 120–bed skilled nursing facility and were to be completed in January, 1983. The project was to provide life-care—when and if it became necessary, a resident could transfer from a residential unit to a skilled nursing bed. Residents were to pay an initial entrance fee plus a monthly charge dependent upon the size of the unit purchased and the number of occupants. The entrance fee was to be

---

1. Rule Special Matters.

(b) *Fraud, Mistake, Condition of the Mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

partially refundable based on the length of the resident's stay at Fiddler's Woods.

In November, 1982, J.R.H. publicly disclosed that it anticipated difficulty in meeting its financial obligations, primarily because the project had not been successfully marketed. In March, 1983, the Fidelity Bank as Trustee for the bondholders took possession of Fiddler's Woods when J.R.H. defaulted by failing to make the installment purchase payment then due. From the time of default through May 1983, Fidelity employed an alternative marketing strategy, *i.e.*, selling Fiddler's Woods as a nonsectarian life-care community. Shortly thereafter, Fiddler's went into receivership. To date, no one has occupied Fiddler's Woods as a life-care resident.

 In its Motion to Dismiss, Price Waterhouse attacked the adequacy of the complaint maintaining that it failed to allege fraud with the particularity required by Fed.R.Civ.P. 9(b) in two basic areas: failure to identify the accounting or auditing principle(s) allegedly violated; and failure to identify the specific allegations against this defendant, P.W. I have carefully examined the complaint in light of P.W.'s contentions. The complaint presently includes allegations which meet the requirements of Rule 9(b); [2] and for those other allegations which are deficient, it would be inappropriate to dismiss the complaint without affording plaintiffs the opportunity to amend it and correct the problems. *DuSesoi v. United Refining Company*, 540 F.Supp. 1260 (W.D.Pa.1982). I will therefore grant P.W.'s Motion to Dismiss in part with leave to plaintiffs to amend their complaint. I will discuss each of the two major deficiencies identified by defendant in order to identify the areas where plaintiffs' allegations are deficient and amendment will be required.

P.W. contends that a recent Third Circuit case, *Christides v. First Pennsylvania Mortgage Trust*, 717 F.2d 96 (3d Cir.1983), changed the Rule 9(b) standard for securities fraud cases by requiring plaintiffs to identify the accepted auditing or accounting principle(s) which plaintiffs alleged defendant had violated by its fraudulent behavior. Plaintiffs maintain that *Christides* did not change the standard at all and plaintiffs need only provide enough information for defendant to be able to frame a response.

In *Christides*, the trial court dismissed a securities fraud complaint under Rule 9(b) after affording plaintiffs several opportunities to amend. The gravamen of the *Christides* complaint was the allegation that defendant's annual report misrepresented that the reserves defendant had established for future losses had been determined in accordance with reasonable and proper accounting methods. The Third Circuit, while cautioning against premature dismissals before discovery, affirmed the dismissal because plaintiff had failed to set forth the accepted accounting practices for calculating reserves and the manner in which defendant had deviated from those accepted methods.

> Those reserves were estimates or predictions of the likely collection or liquidation experience of the Trust in the future. *They could be fraudulent only if, when they were established, the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable accounting practices.* What those practices are

---

**2.** The following allegations in the complaint meet the requirements of Rule 9(b):

 1. In ¶ 44(c), plaintiffs alleged that P.W.'s report did not disclose that the market penetration rates projected in order to successfully occupy the project were exceedingly high in comparison to the rates typically experienced for such projects;

 2. In ¶ 47, plaintiffs alleged that P.W.'s characterization of B'nai B'rith's role in the project

was misleading in conformity with the general intent of defendants to represent B'nai B'rith as a "sponsor" of the project rather than solely as the provider of cultural programs. Defendant maintains that the description of B'nai B'rith in its report is accurate and not misleading. While defendant may ultimately prevail on this issue, the factual allegation provides the requisite particularity to satisfy Rule 9(b).

and how they were departed from is nowhere set forth.

*Id.* at 100 (Emphasis added).

This holding calls into question several of plaintiffs' allegations concerning the geographic market areas determined by defendants to be sources of applicants for Fiddler's Woods. P.W. considered the primary market to be the eight-county region including and contiguous to Philadelphia, including three counties in New Jersey. The secondary market included Metropolitan New York City and certain New Jersey counties. Plaintiffs alleged that these areas did not constitute a proper market area for Fiddler's and, based upon established methods, the market area should have encompassed almost exclusively areas proximate to Northeast Philadelphia. Plaintiffs also alleged that the market penetration rates calculated by defendants were improper because defendants assumed that 30% of the units would be filled from outside the primary market area. Again, plaintiffs maintain that accepted methods would have required defendants to assume that no units would be filled from outside the primary market area (or primary and secondary, if the secondary was reasonably proximate to the project).

P.W. contends that these "established and generally accepted" methods have not been adequately identified as required by *Christides.* At oral argument, plaintiffs elaborated on these allegations stating that the life-care industry was a relatively young industry and formalized standards had not as yet been developed. Plaintiffs stated their intention to present expert testimony at trial concerning the "accepted" way to determine market areas for life-care communities. Plaintiffs maintain that P.W. must be charged with such knowledge because it held itself out to be an expert in this area.

I am concerned that what plaintiffs have alleged may as easily be characterized unwise business judgment as fraud. If this were the only allegation of the complaint, I would give greater weight to defendant's

arguments and to my own concerns, but the complaint does set forth other viable charges against this defendant and it would therefore be inappropriate to strike this allegation. This is particularly true since it is clear that this is not a case in which plaintiffs are abusing discovery by engaging in a "fishing expedition" to uncover a theory on which to prevail against a defendant. Plaintiffs have met the essential purposes of Rule 9(b) by providing sufficiently detailed allegations to apprise defendant of the claim against it and to protect against frivolous claims of fraud. *In Re: Cantanella and E.F. Hutton & Company, Inc. Securities Litigation,* 583 F.Supp. 1388 (E.D.Pa.1984). Plaintiffs have very specifically identified the injury they have suffered and its causes. In this particular instance, plaintiffs have, to the extent possible, also identified the established principle they contend defendant has violated. What has not been determined is whether that principle is indeed "accepted and established." That issue is really a fact question which cannot be decided at the dismissal stage. It will ultimately be plaintiffs' burden to place into issue and ultimately prove that while no formalized standards exist in the life-care industry, accepted and established methodologies do exist. At this initial phase of the case, plaintiffs have met their burden of alleging fraud with the particularity required by Rule 9(b).

▪ Defendant has identified a second area of deficiency under Rule 9(b). Plaintiffs have, in several instances, referred to "defendants" in their allegations without specifying whether P.W. was included among those defendants. Defendant is entitled to know which allegations refer to it specifically. *Tenaglia v. Cohen,* No. 83–1814, slip op. at 9 (E.D.Pa. filed March 8, 1984). At argument, plaintiffs' counsel had no difficulty including P.W. in several of these allegations. It should therefore present no problem for plaintiffs to amend their complaint[3] to specify allegations against P.W.

---

**3, 3a.** Plaintiffs must amend the following allegations to correct the above deficiencies:

A related problem is plaintiffs' many references to omissions from and misrepresentations in the "Official Statement" as a basis of liability against P.W. At argument, plaintiffs' counsel spelled out P.W.'s role in relation to this document and the way in which P.W. was responsible for its problems. This information, however, is totally lacking in the complaint. Since plaintiffs already possess the necessary information, I foresee no impediment to their amending the complaint [3a] to elucidate P.W.'s role in connection with the Official Statement.

Defendant has also attacked several other allegations for a variety of reasons. I find only one of these criticisms valid. Plaintiffs alleged that P.W. failed to disclose that Fiddler's Woods would have to obtain state approval to market a life-care facility in New York, the secondary market for the project. Defendant points out that plaintiffs have failed to allege how this omission was injurious. Plaintiffs should do so in their amended complaint.

Defendant's Motion to Dismiss will be granted in part with leave to plaintiffs to amend their complaint in conformance with this Opinion.

1. ¶ 41 alleged that the "Official Statement" failed to disclose the marketing difficulties experienced by Martin's Run, the only other Jewish life-care facility in the United States, which is located in the Fiddler's Woods' market area. This paragraph also alleged "defendants'" knowledge or reckless disregard of these difficulties.

2. ¶ 45 alleged that "defendants" had compared Fiddler's anticipated operating expenses with those of other facilities and were aware that the expenses forecast for Fiddler's Woods were much lower than those other life-care communities were experiencing and "defendants" did not disclose this information.

3. In ¶¶ 33 and 34, plaintiffs alleged that "defendants" used the "Official Statement" to create the false impression, through misrepresentations and omissions, that 30% of the residential units were under agreements of sale before the bonds were issued.

4. ¶ 34 alleged that while the market analysis done for Fiddler's Woods was based on lower fees and charges than those shown in the "Official Statement," this fact was not disclosed. In their memorandum, plaintiffs have made this allegation about P.W. specifically. That allegation, however, does not appear in the complaint.

5. ¶¶ 36 and 37 alleged that the "Official Statement" failed to disclose restrictions in the deed for the Fiddler's Woods site and that "defendants" intended to violate those restrictions.

6. ¶ 38 alleged that the "Official Statement" failed to disclose that defendants Berman and Sage Development received substantial profits from the sale of the Fiddler's Woods site and this profit was a significant factor in the selection of the allegedly undesirable location and a major impetus for the project itself.