**In re U.S. HEALTHCARE, INC. SECURITIES LITIGATION.**

**This Document Relates to all Actions.**

**Master File No. 88–0559.**

United States District Court, E.D. Pennsylvania.

July 15, 1988.

David B. Zlotnick, Bala Cynwyd, Pa., for plaintiffs.

H. Robert Fiebach, Patrick W. Kittredge, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

### I. INTRODUCTION

The plaintiffs, a class consisting of persons who purchased the stock of U.S. Healthcare, Inc. ("U.S. Healthcare") during the period between July 3, 1985 and August 21, 1987, initiated six separate securities fraud actions which have been consolidated in one Amended Complaint filed on March 11, 1988. Plaintiffs' allegations of fraud center on allegedly false and misleading estimates of unrealized medical claim expenses in the company's annual reports and S.E.C. filings for the years 1985 and 1986. On August 21, 1987, the date upon which the class period closes, the company publicly announced its intention to increase its reserves for medical expenses, presumably to correct the previous underestimations. After August 21, the price of the company's stock declined. Plaintiffs claim that the defendants, including Arthur

---

**2.** The same concerns are applicable for the oth-       er defenses which have been raised.

Young & Company ("Arthur Young"), the company's certified public accountant, deliberately misstated the company's financial condition during the class period in order to artificially inflate the price of U.S. Healthcare stock. Presently before the court is Arthur Young's motion to dismiss for failure to plead fraud with particularity. Fed.R.Civ.P. 9(b). For the reasons that follow, the motion will be denied.

## II. THE COMPLAINT AGAINST ARTHUR YOUNG

Plaintiffs' action against Arthur Young centers on the firm's certification of the company's annual financial statements for the years 1985 and 1986,[1] which were incorporated in the company's annual reports for those years. Plaintiffs allege that Arthur Young

> knew, should have known or recklessly disregarded the fact that the financial statements in U.S.H.'s Prospectus, 1985 and 1986 Annual Reports were false and misleading and thus substantially aided and abetted U.S.H. and the individual defendants in the dissemination of materially false and misleading information. Particularly, Arthur Young did not comply with the standards as provided for in GAAS by failing to exercise reasonable and professional care as set forth in greater detail in paragraphs 55 through 64.

*Consolidated and Amended Class Action Complaint,* ¶ 82. In paragraphs 58 through 64, plaintiffs identify specifically the accounting standards allegedly violated by Arthur Young in preparing the financial statements. The transgressions identified include Arthur Young's alleged failure to follow a conservative approach in order to provide for early recognition of unfavorable events, failure to provide a complete picture of the company's financial condition, failure to make a proper study of the company's internal controls to determine whether reliance on figures provided by the

company was justified, and failure to obtain sufficient evidentiary matter through investigation, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under examination. As a result, plaintiffs allege that "[t]he representations in the Arthur Young audit opinions that the financial statements complied with GAAP and that its own examinations complied with GAAS, were material misrepresentations of fact, knowingly or recklessly made by Arthur Young." *Consolidated and Amended Class Action Complaint,* ¶ 63.

The financial statements at issue, according to plaintiffs, provided a materially false picture of the company's profitability. This is so because, in underestimating the amount of reserves necessary to cover medical expenses, the company was able to show great profits during a period when the cost of medical care was increasing rapidly. These profits caused the price of the company's stock to rise until the August, 1987 announcement that a large amount of these "profits" would be shifted on the balance sheet to cover the expenses that had previously been underestimated.

## III. DISCUSSION

Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). The purpose of Rule 9(b), according to our Court of Appeals, is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984). The Rule requires only that the "circumstances

---

1. Plaintiffs have agreed to limit the class period as against Arthur Young to the period commencing January 31, 1986 and ending August 21, 1987. This is so because the 1985 financial statements were not made public until January

of 1986. With respect to that portion of the class representing parties who purchased prior to January 31, 1986, Arthur Young's present motion to dismiss is moot.

constituting the fraud" be pleaded with particularity. *Cramer v. General Tel. & Electronics Corp.*, 582 F.2d 259, 272 (3d Cir.), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). Conditions of mind such as knowledge and intent may be pleaded generally. *Id.* at 273. I approach the issue here mindful of the Third Circuit's admonition that

> [i]n applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud. Moreover, in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'

*Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal practice and Procedure § 1298, at 407 (1969)).

*Christidis* involved allegations by a class of purchasers of shares of a mortgage trust that the defendants, including the accountant for the trust, had misrepresented the financial condition of the trust in their annual reports. The alleged misrepresentations, like those at issue here, involved estimates of expected future losses. The plaintiffs in *Christidis* alleged that the amount of income allocated to the reserve fund for future losses was inadequate and that the defendants knew or should have known that the figures had not been determined in conformance with the applicable accounting standards. *Id.* at 97–98. The court of appeals affirmed the district court's dismissal of the Complaint pursuant to Rule 9(b) stating:

> [the Complaint's] defect is the complete absence of any disclosure of the manner in which, in establishing reserves for bad debts in the financial statements relied upon, the defendants knowingly departed from reasonable accounting practices. Those reserves were estimates or predictions of the likely collection or liquidation experience of the Trust in the future. They could be fraudulent only if, when

they were established, the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable accounting practices. What those practices are and how they were departed from is nowhere set forth.

*Id.* at 99–100.

The rule enunciated in *Christidis* has been applied in this district in cases of alleged fraud by accountants. *See, e.g., In re Fiddler's Woods Bondholders Litigation*, 102 F.R.D. 291, 293–95 (E.D.Pa.1984). In *Fiddler's Woods*, a class of plaintiffs consisting of purchasers of bonds issued to finance the construction of a nursing home facility brought a securities fraud action against several defendants, including an accounting firm which had prepared a financial forecast report that had been relied upon by the plaintiffs. Plaintiffs alleged that the accountants had failed to comply with the applicable accounting standards in defining the projected market area and in forecasting the degree of market penetration likely to be accomplished by the project. As a result, plaintiff's alleged that the accountants' predictions regarding the likely success of the project were materially misleading. The defendants, relying on *Christidis*, moved to dismiss pursuant to Rule 9(b) on the ground that plaintiffs had failed to identify any established accounting principles that would have required a more modest projection of the likely enrollment at the facility. The court dismissed with leave to amend, but held that plaintiffs had adequately identified the deviations from accounting principles upon which the fraud claim against the accountants was based. The court concluded:

> Plaintiffs have met the essential purposes of Rule 9(b) by providing sufficiently detailed allegations to apprise defendant of the claim against it and to protect against frivolous claims of fraud. Plaintiffs have very specifically identified the injury they have suffered and its causes. In this particular instance, plaintiffs have, to the extent possible, also identified the established principle they allege defendant has violated.... At this initial phase of the case, plaintiffs

have met their burden of alleging fraud with the particularity required by Rule 9(b).

*Fiddler's Woods*, 102 F.R.D. at 294. The court noted that the question whether the accounting principles identified by the plaintiffs were, in fact, "established" was a fact question that could not be resolved before discovery. *Id.*

The parties have identified numerous other authorities in support of their respective arguments. In my view, however, the *Christidis* and *Fiddler's Woods* decisions are dispositive here. I need not respond to each of defendant's arguments, except to note that the decisions of the courts in the Second Circuit are distinguishable in light of the fact that the courts of this circuit have rejected the stringent standard adopted by the Second Circuit. *See Recchion v. Westinghouse Electric Corp.*, 606 F.Supp. 889, 894 (W.D.Pa.1985) (noting that "this circuit appears to temper the quantum of specificity demanded by the Second Circuit" under Rule 9(b)).

In my view, the plaintiffs here have clearly met the requirements of Rule 9(b) as articulated by the court of appeals in *Christidis*. Plaintiffs have identified numerous accounting and auditing standards which, they allege, were not followed by Arthur Anderson in preparing the U.S. Healthcare financial statements for the years 1985 and 1986. Plaintiffs have clearly identified the financial statements which they allege were materially false and have particularly identified the allegedly misleading portion of the documents. It is hard to imagine what more particularity defendants could expect without demanding omniscience on the part of plaintiffs.

Defendant complains that plaintiff has failed to articulate "how" the accounting and auditing standards relied upon were violated. But it is clear from the Complaint that the standards were simply not followed. It is difficult to imagine how plaintiffs could possibly articulate "how" the standards were not followed. The failure to perform a specific act or follow a specific standard is a matter of fact that is simply not given to description in terms of "how". For example, plaintiffs allege that the defendant failed to make a proper study of the internal controls at U.S. Healthcare to determine whether reliance on figures provided by the company was reasonable. Defendants now request that plaintiffs articulate "how" that failure was accomplished. What particularization defendant seeks simply escapes me. The defendant's motion will be denied. An appropriate order follows.