Sol URBACH, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

Thomas D. SAYLES, Jr.,
et al., Defendants.

Civ. No. 91–1291 (HLS).

United States District Court,
D. New Jersey.

Nov. 19, 1991.

Samuel R. Simon, Cherry Hill, N.J., Leonard Barrack, Barrack, Rodos & Bacine, and Harold E. Kohn, Kohn, Klein, Nast & Graf, Philadelphia, Pa., for plaintiff.

Michael R. Griffinger, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., and Dennis J. Block, Weil, Gotshal & Manges, New York City, for defendants.

## OPINION

SAROKIN, District Judge.

Before the court is defendants' motion for certification of appeal.

*Background*

In this class action, plaintiff charges defendants with a variety of securities violations. Plaintiff Urbach brings this suit as a class action, on behalf of all those who purchased securities of Summit Bancorporation ("Summit"), between December 15, 1988 and July 17, 1990 (the "class period"), including those who acquired securities of Summit by exchanging their securities of Somerset Bancorporation, Inc. ("Somerset"), pursuant to a merger which became effective December 15, 1988.[1] A motion for class certification is pending completion of discovery. The suit is brought against Summit and individual defendants who were officers and/or directors of Summit during times material to the claims of the class.

Plaintiff alleges in his complaint that defendants deceived the investing public into purchasing Summit securities at grossly inflated prices. Plaintiff charges defendants with publicizing Summit's supposedly stringent controls, careful underwriting of loans, continuous and scrupulous monitoring of outstanding loans, conservative reserving policies, diverse loan portfolio, and growing earnings and assets. The essence of the complaint is that Summit overstated income and assets by consciously understating its reserves for loan losses.[2]

1. Excluded from the class are the defendants, affiliates of Summit, Summit's president and former officers and directors, members of their immediate families, and any trusts or any entities which they control. Complaint ¶ 8.

2. Plaintiff brings the following claims: claims under Section 10(b) and Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and SEC Rule 10b–5, 17 C.F.R. § 240.-10b–5, for *concealing the true financial and operational condition of Summit by disseminat-* ing various untrue statements of material fact and omitting other material facts, in order to lull the public into believing in the financial integrity of Summit (Count I); claims under Sections 11 and 15 of the Securities Act on behalf of those class members who acquired Summit securities pursuant to the merger with Somerset, for filing a Proxy Statement/Prospectus and Registration Statement which were materially false and misleading (Count Two); claims under Sections 12(2) and 15 of the Securities Act on behalf of the same subclass for

Defendants moved this Court to dismiss all plaintiff's claims. On September 4, 1991, this Court issued an opinion and order ("the September Order") denying defendants' motion to dismiss. 1991 WL 236183.

Defendants now move this Court to certify an appeal of the September 4 Opinion and Order to the United States Court of Appeals for the Third Circuit. With the consent of both parties at oral argument, the court also takes this occasion to clarify the September Order and Opinion.

*Discussion*

28 U.S.C. § 1291 grants courts of appeals jurisdiction of appeals only from final decisions of the district courts. The Interlocutory Appeals Act, codified in 28 U.S.C. § 1292(b), creates a narrowly-tailored exception to the "final decision" requirement:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, .... *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

■ The statute thus enunciates three criteria which must be met before an interlocutory appeal may be granted: the order from which appeal is taken must (1) "involve a 'controlling question of law,'" (2) be of a nature that an immediate appeal

would "materially advance the ultimate termination of the litigation," and (3) "offer 'substantial ground for difference of opinion' as to its correctness." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir. 1974), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (*quoting* 28 U.S.C. § 1292(b)).

The Third Circuit has recognized that these requirements should be stringently observed. *Milbert v. Bison Laboratories, Inc.,* 260 F.2d 431, 433 (3d Cir.1958). In particular, "28 U.S.C. § 1292(b) is not designed for review of factual matters but addresses itself to a 'controlling question of law.'" *Link v. Mercedes–Benz of North America, Inc.,* 550 F.2d 860, 863 (3d Cir.1977) (*en banc*), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (*citing Johnson v. Alldredge,* 488 F.2d 820 (3d Cir.1973), *cert. denied sub nom. Corrections Officer Cronrath v. Johnson,* 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974)).

Plaintiff contends that the issue set forth for certification by defendants—the sufficiency of plaintiff's pleading—should not be certifiable *per se* because it is fact specific, rather then presenting a "clear-cut question of law against a background of determined and immutable facts," such as is required for certification under 28 U.S.C. § 1292(b). Plaintiff's Opp. at 1 (*quoting* 9 *Moore's Federal Practice* ¶ 110.22[2] at 275–76). Plaintiff cites authority for the proposition that questions of law involved in motions to dismiss are seldom controlling questions, insofar as they "relate merely to the form in which a claim ... should be pleaded and do not affect the ultimate substantive requirements for proof necessary to establish the claim which the plaintiff asserts." *Kroch v. Texas Company,* 167 F.Supp. 947, 949 (S.D.N.Y.1958). Further, plaintiff argues

---

primary and secondary liability, charging defendants with conspiring with each other and aiding and abetting each other in connection with the false and misleading Registration Statements (Count III); claims under Section 14(a) of the Exchange Act and Rule 14a–9 on behalf of the same subclass against controlling persons, for false and misleading statements included in the Registration Statements (Count

IV); claims for common law fraud and deceit against all defendants for false and misleading public statements regarding Summit (Count V); and claims for common law negligent misrepresentation, brought against all defendants (Count VI). Plaintiff seeks relief in the form of class certification, compensatory, rescissionary and punitive damages, prejudgment and post-judgment interest, fees and costs.

that the determinations reached by this Court in its Order denying defendants' motion to dismiss involved only the "application of accepted and settled law to the particular fact pattern set forth in the Complaint." Plaintiff's Opposition at 5.

■ Defendants reply that the issue of the sufficiency of plaintiff's pleading satisfies all three requirements for certification. Without deciding on the merits of defendants' motion, this court finds that there is no basis for plaintiff's assertion that motions to dismiss should be regarded as *per se* immune to certification. If this Court's determinations were purely factual, that would indeed bar certification under 28 U.S.C. § 1292(b). However, such a conclusion can only be reached by considering in detail the legal issues raised by defendants and decided by this Court.

In their motion for reconsideration, defendants identify four separate issues which, in their view, satisfy the criteria for certification: whether plaintiff has (1) stated a federal securities claim under Rule 12(b)(6); (2) plead fraud with sufficient particularity to satisfy Rule 9(b); (3) satisfied the relevant statute of limitations; and (4) stated a cause of action under the New Jersey law of negligent misrepresentation. This Court will consider each of these issues in turn to determine which, if any, of them merit certification for appeal.

### The 12(b)(6) Claim

In the September Opinion, this Court held that "allegations of misstatements made by defendants in overstating reported net income and assets by consciously under-reserving for problem loans, and misrepresenting material facts concerning the institution's loan quality, underwriting standards, and loan monitoring procedures" stated a claim under 12(b)(6). Order at 10. Defendants contend that this holding embodies a controlling question of law over which there is substantial ground for difference of opinion. In support of this contention, they cite two district court cases in the Third Circuit, *Fox v. Equimark Corp.*, Civ. No. 90–1504, —— F.Supp. —— (W.D.Pa. May 22, 1991) and *In re UJB Financial Corp. Shareholder Litigation*, No. 90–1569 (D.N.J. Jan. 22, 1991), *notice of appeal filed* (Feb. 25, 1991), which, defendants contend, hold that under-reserving for loan losses represents only mismanagement, not fraud actionable under 12(b)(6). Plaintiff maintains that the distinction between fraud and mismanagement is a factual determination, and that this Court merely came to a different factual conclusion than did the other district courts in their respective cases.

This Court finds plaintiff's characterization of the issue unsatisfactory. There are two possible interpretations of the loan-loss reserve issue which represent distinct legal theories. On the view adopted by this Court in its September Order, a defendant who represents that loss provisions are adequate, and is subsequently proved wrong, may be guilty of either mere mismanagement or actionable fraud. A fraud action will lie where, while representing that loss reserves are adequate, a defendant knows that they are not or lacks any valid basis for her representation. Although there may be many methods for calculating reasonable loss reserves and a wide margin for error based on good faith management decisions, a manager who states that reserves are adequate with the knowledge that they are not should not, in the view of this Court, be immune from an action brought by those she defrauds.

On the other hand, one could maintain as a matter of law that decisions about loss reserves are always business decisions, and hence always insulated from 12(b)(6) liability, even if the corporation and its managers are certain, at the time the reserve amount is determined and disclosed to investors, that the reserves will be inadequate. That interpretation may gain some support from the undoubted fact that providing for future losses involves substantial uncertainty. This Court, however, has rejected the temptation to turn the absence of certainty into a license for unbridled misrepresentation. Although a manager may never "know" with absolute certainty that a reserve against anticipated losses is inadequate, there will be circumstances where she "knows," based on any plausible

and acceptable means of calculation, projection, or forecast, that reserves must be increased and yet represents that they need not be.[3] The September Order is premised on the view that the latter type of knowledge is sufficient to ground a claim of fraud under 12(b)(6).

Whether the September Order involves a controlling issue of law and whether there is substantial ground for difference of opinion as to its correctness turn on whether the authorities cited by defendants adopt this Court's interpretation of the scope of 12(b)(6) and merely come to different conclusions about its application to particular facts, or embrace the opposing view that misrepresentation of the adequacy of reserves can never rise to the level of actionable fraud.

It is the view of this Court that both the authorities within this Circuit cited by defendants and the weight of legal authority generally adopt the same interpretation of the Securities Acts and employ the same legal principles expressed in the September Order.

It is well accepted in the Third Circuit and other circuits that projections or estimates can ground a fraud claim under the securities laws. *See In re Craftmatic Securities Litigation*, 890 F.2d 628, 645–46 (3d Cir.1989) ("[a] projection that is issued without a reasonable basis is an untrue statement and actionable under § 10(b) and Rule 10b–5 if made knowingly or recklessly"); *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985) ("[a]n opinion or projection, like any other representation, will be untrue if it

has no valid basis") (citation omitted); *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 194 (5th Cir.1979), *modified*, 611 F.2d 105 (5th Cir.1980) (projections may be actionable); *SEC v. Okin*, 137 F.2d 862, 864 (2d Cir.1943); *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489 (9th Cir. 1974) (forecasts); *Myzel v. Fields*, 386 F.2d 718, 734 n. 8 (8th Cir.1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *SEC v. Haffenden–Rimar Int'l, Inc.*, 362 F.Supp. 323, 327 (E.D.Va.1973), *aff'd*, 496 F.2d 1192 (4th Cir.1974) (projections).

■ It is also well recognized that loan loss provisions reflect a projection about the risk of a loan portfolio; *see, e.g., Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). As has been acknowledged by almost every court directly confronted with the question, fraudulent projections about loan loss and risk—like fraudulent projections about other business matters of relevance to an investor—may be a basis for legal liability under the securities laws.[4] *See, e.g., In re Midlantic Corp. Shareholder Litigation*, 758 F.Supp. 226 (D.N.J.1990); *First American Bank and Trust v. Frogel*, 726 F.Supp. 1292, 1294 (S.D.Fla.1989); *see also* cases collected in *Steiner v. Shawmut Nat. Corp.*, 766 F.Supp. 1236, 1243–46 & n. 19 (D.Conn. 1991); *cf. Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (loss reserves may be fraudulent where "property appraisals relied on where either knowingly false, or so facially unrea-

---

**3.** Further, there may be situations where the inadequacy of a reserve has become certain. If, for example, a debtor is penniless and bankrupt, or all collateral securing a loan is destroyed, no loss reserve exists, and the loan has yet to be written off, then the reserve is inadequate as a purely factual matter.

**4.** The SEC has in recent years settled numerous securities fraud actions brought against financial institutions on the theory that the institution fraudulently misrepresented the adequacy of its loss reserves and credit practices. *See, e.g., SEC v. Parigian*, 6 Fed.Sec.L.Rep. (CCH) ¶ 73,726 (D.Mass. May 18, 1990); *In re Texas Bancshares, Inc.*, Securities Act Release No.

24803, Accounting and Auditing Enforcement Release ("AAER") No. 146 (August 17, 1987); *In re First Chicago Corporation Securities Exchange Act*, Release No. 34–24567, AAER No. 134 (June 10, 1987); *In re Continental Illinois Corp.*, Securities Exchange Act Release No. 24142, AAER No. 128 (Feb. 27, 1987); *SEC v. McMahen*, No. 85–289 (D.D.C. Sept. 12, 1985); *SEC v. Butcher*, No. LR–C–84–942 (E.D.Ark. Nov. 9, 1984); *SEC & OCC v. Fraser*, No. 84–2652 (D.D.C. Aug. 30, 1984); *In re Utica Bankshares Corp.*, Securities Exchange Act Release No. 34–20702 (Feb. 29, 1984); *SEC v. IntraWest Financial Corp.*, No. 84–0604 (D.D.C. Feb. 28, 1984).

sonable as to be beyond the realm of reasonable reliance for accounting practices").

Many well-reasoned opinions that have granted motions to dismiss in such cases have recognized that intentional or reckless understatement of loan loss reserves may ground a fraud claim, but found that the facts alleged by plaintiff in the particular case amounted to no more than mismanagement. *See, e.g., Steiner*, 766 F.Supp. at 1243, 1246–47. Although a few cases, not in this circuit, have granted motions to dismiss in such general terms as to give rise to the suggestion that no cause of action for fraud can ever be maintained based on misrepresentations regarding loan loss reserves, *see, e.g., Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32 (D.N.H.1991), this court is satisfied that among courts squarely presented with the question, there is little doubt that misrepresentations concerning the adequacy of loss provisions are in principle actionable under 12(b)(6).

Finally, if there was any doubt about the actionability of fraudulent projections, including loan loss projections, that doubt has been removed by the Supreme Court's recent decision in *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). In *Virginia Bankshares*, the court held that knowingly false statements of opinion or belief, such as representations that the value that shareholders were to receive for their bank stock was "high" or a deal was "fair," could ground a securities fraud claim. *Id.* 111 S.Ct. at 2755.

[Such representations are] reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading.... provable facts either furnish good reasons to make a conclusory commercial judgment, or they count against it, and expressions of such judgments can be uttered with knowledge of truth or falsity just like

more definite statements, and defended or attacked through the orthodox evidentiary process....

*Id.* at 2758.

Because valuation of a business necessarily takes into account projections of its likely future performance, *Virginia Bankshares* supports the proposition that representations of belief about future performance may be actionable. But the Court's reasoning also supports the narrower principle that misrepresentation of the adequacy of loan loss reserves can be a basis for liability. The Court found that the statement that a bank's stock price reflected a high valuation was actionable because it "depended on whether provable facts about the Bank's assets, and about actual and *potential levels of operation*" substantiated such a value "when assessed in accordance with recognized methods of valuation."[5] *Id.* at 2759 (emphasis added). Implicit in this finding is a recognition that representations about the adequacy of loan loss reserves can similarly ground a fraud claim, since the valuation of a bank's assets necessarily includes a valuation of the adequacy of its loan loss reserves.

Further, the Court found that a representation about a bank's book value could be fraudulent because it did not take into account the impact of the changed value of the bank's real estate holdings. *Id.* at 2759, 2761. The same rationale supports a fraud action, such as is at issue in this case, brought on the theory that representations about the adequacy of loan loss reserves did not take into account the impact of the changed value of the real estate collateralizing those loans.

Defendant relies on two cases in the Third Circuit to make its case for certification: *Fox v. Equimark Corp.*, 782 F.Supp. 295 (W.D.Pa.1991) and *In re UJB Financial Corp. Shareholder Litigation*, No. 90–1569 (D.N.J. Jan. 22, 1991). In *Fox*, the court's holding turns not on 12(b)(6) but on

---

**5.** *See also Mendell v. Greenberg*, 938 F.2d 1528, 1529 (2d Cir.1991) (as amended) ("[w]hat the Court appears to require [in *Virginia Bankshares*] is 'garden-variety evidence, subject neither to a plaintiff's control nor ready manufacture,' with 'no undue risk of open-ended liability or uncontrollable litigation,' *i.e.*, proof that the value of the company's stock, 'when assessed in accordance with recognized methods of valuation,' was higher than the 'fair' price stated by the directors") (*quoting Virginia Bankshares*, 111 S.Ct. 2749, *passim*).

Rule 9(b). — F.Supp. at — The *Fox* court explicitly entertains the possibility that a fraud claim may be stated for knowing misrepresentation of the adequacy of loss reserves, at —; plaintiff's action is dismissed on the different ground that, by failing to show how defendant should have known that the reserves were inadequate, plaintiff failed to plead his fraud claim with sufficient particularity to satisfy the requirements of 9(b). At —; *see* discussion *infra.*

Similarly, *UJB* draws a different line than the one defendants would urge upon the court. Following the Supreme Court's decision in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476–79, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977), the *UJB* court dismissed certain 12(b)(6) claims as being based on mismanagement rather than fraud. Among the claims it dismissed was the allegation that "defendants caused UJB to continually understate its non-performing loans and failed to provide adequate loan loss reserves." Slip Op. at 5. However, the court stated that its determination was based on the fact that, in raising this allegation, plaintiff "did not even allege omissions or misstatements.... they simply discuss[ed] ways in which defendants should have performed better." *Id.* at 6.

The perspective of the *UJB* court is more tellingly revealed in the further determination that the claim that "many of UJB's ... loans ... were not adequately collateralized or secure, contrary to defendants' representations," represented a "mixed issue of fraud and mismanagement." *Id.* at 6. The *UJB* court observed:

> Here, plaintiffs complain about defendants' business practices. However, they also present very specific references to claims made by defendants. Distinguishing between, for example, the allegedly inadequate collateralization and plaintiffs' reliance on assurances about collateralization, the court finds that the former is an allegation of mismanagement which does not state a claim under the securities acts, whereas the latter does state a claim, since it asserts that

defendants made omissions or misstatements of material facts.

Slip Op. at 6–7. Thus, *UJB* stands precisely for the proposition adopted in the September Order, that knowing misrepresentation of material facts, including statements about future circumstances that necessarily contain an element of uncertainty such as forecasts about the adequacy of collateralization, can be an adequate basis for a 12(b)(6) action.

This Court finds that neither the Third Circuit authorities relied upon by defendants nor the weight of legal authority, especially in light of *Virginia Bankshares,* stand for the legal proposition, admittedly in conflict with the views expressed in the September Order, that representations about the adequacy of loan loss reserves can never ground a fraud claim under 12(b)(6). Therefore, this Court declines to certify its denial of defendants' motion to dismiss on the basis of disagreement over the applicability of 12(b)(6) to such representations.

*The Standard for Pleading Fraud Under Rule 9(b)*

Federal Rule of Civil Procedure 9(b) requires that:

> In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In the September Order, this Court concluded that plaintiff's complaint satisfied this pleading standard. Defendants seek certification of the September Order on the basis of this finding. Defendants raise two grounds for their motion. First, they urge that there is substantial disagreement within this Circuit on this Court's conclusion that claims under §§ 11 and 12(1) of the Securities Act of 1933 and § 14(a) of the Securities Exchange Act of 1934 sound in negligence and therefore need not satisfy the pleading requirement of 9(b). However, this Court further stated in reference to this issue that "in light of the court's ruling ... that the complaint satisfies the requirements of Rule 9(b), a determination

on this issue is unnecessary." Slip Op. at 13. Because the applicability of Rule 9(b) to these claims was not decided in reaching the holding of the September Order, we decline to certify the Order for appeal on this basis.

Defendants' second ground for certification is no more persuasive: defendants assert that there is a substantial ground for difference of opinion in this Circuit with this Court's finding that plaintiff pleaded his claim with sufficient particularity.[6] This court is of the view that the discussion of plaintiff's burden under Rule 9(b) in the September Opinion, as clarified in the present Opinion, is consistent with the law of this circuit, and that no substantial ground for difference of opinion exists with the standards employed by the court therein. Accordingly, the court declines to certify the September Order for appeal on the basis of its interpretation of the requirements of Rule 9(b).

In the September Order, it was held that plaintiff had alleged fraud with sufficient particularity because he had identified (1) specific statements which he contends were the subject of the fraud and (2) specific loans which, plaintiff alleged, defendants knew were bad and for which adequate reserves were not taken. The Court reasoned that these pleadings satisfied the purpose of Rule 9(b) because defendants were thereby placed on notice as to why they were being sued.

6. Defendants also claim that this Court, in accepting as adequate under Rule 9(b) plaintiff's "information and belief" pleading, departed from legal principles elsewhere accepted. Def. Memo. at 6. However, as is recognized by defendants, there is an exception to the bar on information and belief pleading where the details of the alleged fraud are peculiarly within the defendants' knowledge or control, so long as such allegations are "accompanied by a statement of the facts upon which the belief is based." *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). As is discussed below, we find that plaintiff adequately alleged the facts supporting his pleadings.

7. This court takes no position on whether the Second Circuit's view that Rule 9(b) also serves to inhibit strike suits has been adopted in this Circuit. *See, e.g., Divittorio v. Equidyne Extrac-*

This court remains convinced that the complaint was stated with sufficient particularity to satisfy Rule 9(b). However, the court will take this opportunity to clarify the reasoning by which it reached this conclusion.

As was noted in the September Order, the purpose of the pleading requirements of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." [7] *Seville Industrial Machinery Corp. v. Southmost Machinery, Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

Allegations of fraudulent projections, as are at issue here, present a particular risk of frustrating these purposes. As Judge Friendly warned, such claims raise a danger of "fraud by hindsight." *Denny v. Barber*, 576 F.2d 465 (2d Cir.1978). The fact that a projection or estimate turned out to be incorrect, standing alone, does not even raise an inference that the statement was fraudulent when made. However, by attributing the present knowledge that a projection has turned out to be obviously erroneous to the speaker at the time the representation was made, plaintiffs may raise "spurious charges" against wholly innocent behavior. This problem with allegations of fraudulent projections was well described by the 7th Circuit in a recent opinion: [8]

*tive Industries, Inc.*, 822 F.2d 1242 (2d Cir.1987); cf. *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983).

8. However, this court does not endorse the *DiLeo* court's conclusion that "[i]f all that is involved is a dispute about the *timing* of the writeoff, based on estimates of the probability that a particular debtor will pay, we do not have fraud." 901 F.2d at 627. This ruling would have us ignore the well-accepted principle that it is no defense to a fraud claim to assert, as one may with all predictions, that one can imagine a circumstance in which the representation would be accurate. *See, e.g., Virginia Bankshares*, 111 S.Ct. 2749; *Craftmatic*, 890 F.2d 628; *Eisenberg*, 766 F.2d 770. A knowing, unqualified representation that a highly improbable proposition is true or likely to be true is no less actionable under the securities laws than the knowing communication of outright lies.

The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. 'Must be' is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (citations omitted).

In view of these concerns, courts have enunciated further requirements for satisfying Rule 9(b) in cases of fraudulent projection, which go beyond the two elements cited in the September Opinion. The Third Circuit remanded a case to give plaintiffs an opportunity to amend their complaint where the allegations, although specifying "the dates, the speaker, and the actual projections at issue," did not explain why there was no reasonable basis for the projections. *In re Craftmatic Securities Litigation*, 890 F.2d 628, 646 (3d Cir.1989). The circuit court stated that:

> plaintiffs need not necessarily allege the specific information at defendants' disposal at the time the projections were made. However, plaintiffs must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within the defendants' control.

*Id.*

■ Establishing that plaintiff's charges are not "baseless" requires that plaintiff plead two separate, but closely related, elements with specificity, in addition to specifying the allegedly fraudulent representations and the defendants charged. First, plaintiff must plead non-conclusory facts that, if true, would demonstrate that the projections were false when made. *See In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 666 F.Supp. 547, 557 (S.D.N.Y.1987) ("[t]he complaint for securities fraud must identify ... the manner in which [the misrepresentations allegedly made] are considered false"); *DiLeo*, 901 F.2d at 627 (complaint fails because "[y]ou cannot tell from reading it why [plaintiffs] believe that the problems were so apparent that reserves should have been jacked up before [the bank did so]—why failure to increase the reserves amounted to 'fraud' "); *Goldman v. Belden*, 754 F.2d 1059, 1069 (2d Cir.1985) (complaint was sufficient where it "gave particulars as to the respect in which plaintiff contended the statements were fraudulent"). This is a particularly important element with charges of fraudulent projection, since, if proved, these facts will establish that the statement was fraudulent, and not merely a good faith estimate or reasonable speculation that turned out to be incorrect.

Second, plaintiff must plead facts "from which an inference of fraud by a given defendant may be drawn." *In re Union Carbide*, 666 F.Supp. at 557 (citation omitted). Although *scienter* "may be averred generally" under Rule 9(b), and "great specificity" is therefore "not required with respect to the allegations of knowledge and scienter," *Goldman*, 754 F.2d at 1070, allegations "relating to projections or expectations offered to induce investments" must still "allege particular facts demonstrating the knowledge of defendants at the time that such statements were false," *Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir.1986), or that the defendant acted with reckless disregard of their truth or falsity. *Eisenberg v. Gagnon*, 766 F.2d 770, 777 (3d Cir.1985) ("showing of recklessness is sufficient to establish *scienter* for a claim under § 10(b)") (citations omitted); *see also Design Time v. Synthetic Diamond Technology*, 674 F.Supp. 1564, 1571 (N.D.Ind.1987) (in case of alleged fraudulent projection, *scienter* may be generally averred, but the "complaint must set forth specific factual allegations that would support an inference of actual knowledge") (citations omitted).

While raising the pleading standard for plaintiffs alleging fraudulent projections, these requirements should not and do not create an insurmountable barrier. The Third Circuit has emphasized 'that courts must not require that plaintiffs plead facts "uniquely in the defendant's knowledge or control." *In re Craftmatic*, 890 F.2d at 645.

Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.... We agree that rigid enforcement in such circumstances could permit "sophisticated defrauders" to avoid liability.

*Id.* (citations omitted). Hence, plaintiffs pleading fraudulent projection must allege facts, available to outsiders to the enterprise or transaction, which, if true, would show that the projection could have been known to be false when made and raise an inference that the defendant knew them to be false or acted in reckless disregard of their truth or falsity.

Few cases concerning allegations of fraud based on representations about loan loss reserves have had occasion to apply this type of 9(b) analysis. However, several securities fraud cases involving other types of allegedly fraudulent projection provide instructive analogies for the case at hand.

Typically, no "smoking-gun" evidence is available to plaintiffs, who must rely on external facts, knowledge of which may be attributed to defendants because of specific representations made by defendants or because of the nature of the business in which they are engaged. In *Goldman v. Belden*, plaintiff alleged that projections about the growth of a business based on sales of a new telephone product, which proved to be dramatically overly optimistic, were fraudulent when made.[9] 754 F.2d 1059 (2d Cir.1985). The new product was to be marketed jointly by the defendant firm and AT & T. The complaint alleged that, at the time defendants made their sales projections, it was apparent that the product would be at a significant competitive disadvantage to other firms' products because of certain technological features [10] and because of the break-up of AT & T and obligations imposed on it by the consent order.[11] Further, plaintiffs alleged that the sales projections were faulty because based on the experience of selling different products to different markets.[12]

The court found that these allegations were sufficient under 9(b) to raise an inference that defendant's projections were false when made. The court further held that *scienter* had been pleaded with the requisite particularity because knowledge of the company's true competitive situation could be attributed to defendants based on their "own public statements and self-portrayals as industry-wise businessmen." *Id.* at 1070; *see also Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989) (allegations that financial projections were fraudulent pleaded fraud with sufficient particularity, where import ban on main product market made projections unrealistic when made, and knowledge of the existence of the import controls could be imputed to defendant since country imposing import constraints was major market for defendant); *Felton v. Walston & Co.*, 508 F.2d 577, 582 (2d Cir.1974) (fraud claim based on earnings projections satisfied Rule 9(b), where presi-

**9.** Officers of the company stated that they would "try to be doing something in the order of 40 or 50% growth;" they the firm was "geared up to do a lot more business than [it did] last year"; and that the breakup of AT & T would create new opportunities for the firm. *Id.* at 1062.

**10.** Plaintiffs alleged, *inter alia,* that defendants' product was incompatible with existing equipment and could not perform certain functions, and that competing equipment was not so disadvantaged. *Id.* at 1063.

**11.** Among these alleged disadvantages were that AT & T could only lease equipment under the Consent Order and that equipment upgrades would be slowed by AT & T's need to obtain tariff approval.

**12.** Plaintiff alleged that defendant based its projections on sales of products within AT & T, whereas the new product would be sold to outside customers. Plaintiff further alleged that no marketing survey had been conducted among outside customers. *Id.* at 1063.

dent of analyzed company disavowed the projections to the analyst, who thereafter failed to alter his representations about the company's likely profitability).

In a similar case involving charges of inadequate loss reserves, *Clairdale Enterprises v. C.I. Realty Investors,* 423 F.Supp. 257 (S.D.N.Y.1976), plaintiff's fraud claim survived a Rule 9(b) challenge. Plaintiff alleged that a quarterly report fraudulently overstated a firm's assets by failing to provide for additional losses on real estate properties which were "almost worthless" and had a negative cash flow. *Id.* at 258–59. The court found that the complaint was sufficient, since plaintiff had alleged "facts from which it has been inferred that specific properties held by [defendant] generate negative cash flow or are otherwise worthless," the existence of some properties generating negative cash flow had been admitted in defendant's annual reports, and the information needed to further particularize the complaint was uniquely in defendant's control. *Id.* at 259–60.

These cases may all be contrasted with situations in which plaintiff alleged no more than that a projection or estimate was made and subsequently proved to be inaccurate. In such circumstances, courts have not hesitated to grant dismissal under Rule 9(b). *See, e.g., Mancini v. Prudential–Bache/Fogelman Harbour Town Properties,* No. 90–5213, 1991 WL 171966 (N.D.Ill. Sept. 3, 1991) ("[w]hile the projections [of operating revenues] are clearly different from the tale that was being told in [a later report], these differences alone do not bespeak fraud absent some facts suggesting that the differences are attributable to fraud"); *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 117–18 (2d Cir.1982) (faulty projection did not state a claim for fraud, where projection was based on "forecasts of a higher level of housing starts as well as stimulative government programs" and plaintiff failed to "allege any particulars as to why [defendant's] stated reliance on those forecasts was false or misleading").

Applying these examples to the facts of the present case, this court finds that plaintiff has alleged facts sufficient to raise an inference that defendants' representations about the adequacy of the bank's loss reserves were false when made and that defendants knew this or acted in reckless disregard of the truth or falsity of their representations. As stated in the September Opinion, the complaint identified specific representations plaintiff alleged to be fraudulent and specific loans for which he alleged insufficient reserves had been taken. September Opinion at 15–16. But additionally, the complaint recited that the real estate market had weakened, already resulting in some lessening in loan quality, at the time defendant represented in April of 1989 that its "loan loss reserve is an adequate cushion for any future problems which may arise." Complaint at ¶ 34. The complaint adequately plead that this information was known to defendants, since defendants themselves stated, in their 1988 Annual Report, that "[i]n the third quarter of 1988," certain real estate loans, "represent[ing] potentially troubled situations resulting from the weakening of the real estate market in New Jersey.... were classified as nonperforming, resulting in an increase in the level of nonperforming assets in 1988." *Id.*

It could also be inferred that defendants were on notice of the tenuousness of their representations from plaintiff's allegation that defendants stated in the 1988 Annual Report that they had "an aggressive business development effort in place." Complaint at ¶ 35. These plans bore fruit to some extent, since the Financial Report for the First Quarter of 1989 reported that outstanding loans had grown by 11.5% from 1988 levels. Complaint at ¶ 37. It could be reasonably inferred from this aggressive growth plan that defendants were, or should have been, aware of the potential for increasingly large losses, on the assumption that loan sales growth was achieved by a lowering of credit standards.

In the Financial Report for the First Quarter of 1989, disseminated in April 1989, defendants allegedly stated that "we are confident that the events of recent

months do not indicate an on-going trend.... Our loan loss reserve ... represents a level sufficient to cover any potential deficiencies." Complaint at ¶ 38. Defendants had increased their loan loss reserve by only .02% from the previous quarter. Complaint at ¶¶ 33, 38. However, non-performing assets had increased from .86% of total loans a year ago, to 1.65% by March 31, 1989. Complaint at ¶ 38.

In the Financial Report for the Second Quarter of 1989, disseminated in July 1989, defendants reported that their loan loss reserve, which had decreased marginally from the previous quarter, "is more than adequate to cover any potential losses." Complaint at ¶ 40. Only on October 18, 1989, did defendants announce that they had made substantial additions to their loss reserves, which defendants attributed to slowing economic growth, over-building, and a "general weakness in the real estate market." Complaint at ¶¶ 42, 46.

These allegations are sufficient to raise an inference that defendants' reserves were in fact inadequate at the time the alleged misrepresentations were made, and that defendants knew as early as the third quarter of 1988 that their reserves were highly likely to be inadequate and yet continued, through July of 1989, to represent that the reserves were "more than adequate." Plaintiff's pleading is no model of clarity or conciseness in setting forth these allegations. But, in view of the claims present in the complaint and of Federal Rules of Civil Procedure 8(e) & (f), which reject technical forms of pleading and require that pleadings be construed so as to do substantial justice, this court is of the view that little purpose would be served in requiring plaintiffs to amend their complaint to restate these same claims.

Defendants assert that this holding conflicts with the views expressed in the Third Circuit's decision in *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96 (3d Cir.1983), as well as with two district court decisions in the Third Circuit, *In re*

*UJB Financial Corp. Shareholder Litigation* and *Fox v. Equimark Corp.* Although, as plaintiff contends in his opposition to defendants' motion, the determination of the particularity of a pleading is a fact-intensive exercise, a question of law may be raised where it is said that, with respect to a particular kind of fraud, certain types of facts must be pleaded to satisfy Rule 9(b). Because the court finds that no differences of opinion over such a question of law exist between the holding of the September Opinion, as clarified herein, and the Third Circuit authority cited by defendants, certification will not be granted on the basis of this court's interpretation of Rule 9(b).

Although the authorities cited by defendant reject plaintiffs' fraud claims for failing to satisfy Rule 9(b), the showing of particularity they require is no different from the standard enunciated by this court and satisfied by the plaintiff. In *Christidis,* the Third Circuit held that a complaint alleging fraudulent misrepresentation of the adequacy of loss reserves was insufficiently particularized to survive Rule 9(b) scrutiny. The circuit court found that the complaint's flaw lay in the fact that the complaint "says nothing about the method whereby [the defendant's estimates for future losses] were made or the manner in which that method departed from reasonable accounting practices and procedures." *Id.* at 99. The court concluded that:

> [the] defect [of the complaint] is the complete absence of any disclosure of the manner in which, in establishing reserves for bad debts ..., the defendants knowingly departed from reasonable accounting practices.... What those practices are and how they were departed from is nowhere set forth.

Similarly, in *Fox v. Equimark Corp.,* 782 F.Supp. 295 (W.D.Pa.1991), the district court rejected a claim based on alleged fraudulent misrepresentations about loan loss reserves on the grounds that the complaint failed to explain "the manner in which reserves were improperly established," "*how* [defendant] knew the reserves to be inadequate or *why* it should

have increased its reserves earlier." At 300, 301.

In both of these cases, the defect of the complaint is that plaintiff failed to plead facts that would show that defendant's projections and representations were false when made and that defendant knew this. In *Christidis*, plaintiff relied on conclusory assertions about the unreasonableness of defendant's accounting practices, without alleging any facts raising an inference that defendant had done more than project losses in good faith. In *Fox*, plaintiff failed to plead any facts showing how defendant could have known its reserves were inadequate. Both pleadings would fail under the 9(b) standard relied upon by this court.

Further, the 9(b) pleading standard adopted in *Christidis* and *Fox* is identical with the showing required in this opinion. *Christidis* required that a plaintiff claiming loss reserve fraud allege how defendants knowingly departed from reasonable accounting practices. An allegation, as required by this court, that defendant's representations about its loss reserves were false when made necessarily implies that defendant departed from reasonable accounting practices; if defendant had relied on reasonable accounting practices in projecting its loss reserves and represented this projection accurately, its representation would not have been false. Plaintiff carried this burden in the present case by citing various economic indicators which allegedly should have led defendant to a different conclusion about the adequacy of its reserves. In the terms of the *Christidis* court, plaintiff has alleged that defendant departed from reasonable accounting practices by failing to increase its reserves in response to a weakening economy and a probable decrease in the quality of its loans and collateral.

To require more than this from plaintiffs would effectively foreclose a cause of action for fraud based on any representation about loss reserves. Requiring plaintiffs, for example, to describe in their pleadings the particular accounting methods employed by defendant and to detail their shortcomings would raise a practically insurmountable hurdle. Before discovery is

had, it will be extremely difficult for plaintiffs to know in what respect defendants' calculations were deficient. The information that would allow plaintiffs to identify an appropriate reserve for a loan—information about the soundness of the debtor and the value of collateral—is "peculiarly within the defendant's knowledge or control." *Craftmatic*, 890 F.2d at 645. Because this court does not believe that the Third Circuit intended to require plaintiffs to allege facts that outsiders to a financial institution do not, except in the rarest of circumstances, possess, the court finds that *Christidis* prescribes the same 9(b) pleading standard employed in the present opinion.

*Fox* and *UJB* similarly agree with this court's reading of Rule 9(b). The *Fox* court faulted plaintiff for failing to allege how defendant knew its reserves were inadequate or why defendant should have increased its reserves earlier. Both showings were explicitly required by this court and provided by plaintiff in the present action.

*In re UJB*, also cited by defendant, is equally compatible with this court's holding. The *UJB* court found that:

> plaintiffs have pled with great specificity the particular statements which are allegedly false, as well as when, where, and by whom those claims were made. Despite their assertions to the contrary, however, plaintiffs have not indicated with sufficient particularity how those statements are false.

Slip Op. at 16 (*citing Christidis*, 717 F.2d at 99–100). In order to raise an inference, as required by this court, *that* defendant's statements are false, plaintiffs must allege facts showing *how* they are false. In this case, plaintiff carried this burden by alleging that defendant's reserve projections failed to take account of certain economic factors known to defendant.

In sum, this court is satisfied that had the *Christidis*, *UJB*, and *Fox* courts, employing the standards on which they relied, considered allegations such as those plaintiff raised herein, they would have come to the same conclusion as this court, that plaintiff has alleged fraud with sufficient

particularity to satisfy 9(b). Accordingly, this court finds that the pleading requirements of 9(b) do not present a certifiable issue.

*Statute of Limitations*

Defendants state that there is no issue as to the statute of limitations applicable to plaintiff's federal securities claims. Def. Memo. at 9. However, defendants contend that there are two substantial grounds for difference of opinion with this Court's conclusion that plaintiff's claims satisfy the applicable limitation. First, defendants argue that plaintiff has failed to plead compliance with the limitations period with respect to his claims under Section 11 of the Securities Act and Sections 10(b) and 14(a) of the Exchange Act. Second, defendants claim that plaintiff's complaint is deficient because it does not allege facts demonstrating why discovery should not have been made earlier, but merely states in conclusory fashion that plaintiff could not have discovered the fraud earlier.

■ Under *Hill v. Der*, 521 F.Supp. 1370, 1389 (D.Del.1981), a precedent followed by other courts in this circuit, in order to satisfy the statute of limitations requirement a complaint must set forth the time and circumstances of the discovery of the fraudulent statement, the reason why discovery was not made earlier, and the diligent efforts plaintiff undertook in making such discovery. *See Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1279 (D.N.J.1990); *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1112 (E.D.Pa.1985). In its September Order, this Court stated that the rule in *Der* applies only to claims under §§ 12(2) and 15(c) of the Securities Act, and concluded that plaintiff had alleged facts sufficient to satisfy the *Der* standard with respect to these claims.

Defendant contends that this holding merits certification because it disagrees with courts that have found that the *Der* pleading requirements apply to Section 11 of the Securities Act and Section 10(b) and 14(a) of the Exchange Act as well as Section 12(2) of the Securities Act and 15(c) of the Exchange Act. Def. Reply at 7. Even if this conflict is genuine, however, it fails

to justify certification. The showing required under *Der* to plead compliance with the statute of limitations is identical whether a claim is brought under §§ 10(b), 11, 12(2), 14(a), or 15(c). This court found that plaintiff had satisfied the *Der* standard with respect to claims under §§ 12(2) and 15(c) of the Securities Act through allegations incorporated in all counts of his complaint. Therefore, even if plaintiff were required to plead compliance with the statute of limitations with respect to each of his claims, this court would find that the complaint had carried this burden.

Further, even if plaintiff had failed to plead compliance with respect to certain claims, plaintiff could remedy his error by the simple expedient of amending his complaint to provide explicitly that the facts alleged with regard to the Section 12(2) and 15(c) counts applied to all his claims. *See* 16 C. Wright, A. Miller, et al., *Federal Practice & Procedure* § 3930 at 159 n. 11 (a ruling on the sufficiency of a pleading is generally "unsuitable for interlocutory appeal because of the ready availability of amendment") (citations omitted). Accordingly, even if plaintiff's pleading suffers from a technical deficiency, the issue of the pleading requirements for claims under Section 11 of the Securities Act and Sections 10(b) and 14(a) of the Exchange Act would still be inappropriate for certification, since an appeal, whether it affirmed or overturned the decision of this court, would not "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d at 754.

Defendants' second claim also fails to identify a certifiable issue. Plaintiff's pleading satisfies both the *Der* standard and the legal principles involved in every case cited by defendants. *See Dolsky v. Johnson*, [1990–1991 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95, 840, at 99,078, 1991 WL 3540 (E.D.Pa. Jan. 9, 1991), *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1340 (D.Del.1983); *Bresson v. Thomson McKinnon Secs., Inc.*, 641 F.Supp. 338, 343–44 (S.D.N.Y.1986). The September Order cited specific paragraphs in the Complaint which set forth the date on which the

defendants' poor financial condition was allegedly first disclosed to plaintiff. This Court found that plaintiff had cited "numerous factors" which revealed in July 1990 that the alleged fraud had occurred, none of which were known to plaintiff or could have been learned by him before that date. Slip Op. at 8. Defendants' contention that the September Order is inconsistent with cases which have held that plaintiff may not "merely state in conclusory fashion that [he] could not have discovered the fraud [earlier]" is thus premised on a misreading of the Court's Order. Def. Memo. at 11 (*quoting Hill v. Equitable Trust Co.*, 562 F.Supp. at 1340; and *citing Insurance Consultants of America, Inc. v. Southeastern Insurance Group, Inc.*, 746 F.Supp. 390, 407 (D.N.J.1990)).

This Court did not rely on conclusory statements, but identified specific allegations stating why plaintiff did not discover the alleged fraud prior to the date he purports to have become aware of it. It is, as this court held, a fact question for the jury whether plaintiff should have discovered those alleged violations earlier. In any case, there is no conflict of law concerning the nature of the pleading required to allege compliance with the statute of limitations, and hence no basis for certification.

*Negligent Misrepresentation*

█ Defendants finally argue that the September Order merits certification because of its holding that, under New Jersey law, a claim of negligent misrepresentation may be brought on behalf of the general investing public. Slip Op. at 22. This Court agreed with the decision of *In re Midlantic*, which held that representations to individual investors can ground a negligent misrepresentation claim. *In re Midlantic Corp. Shareholder Litigation*, 758 F.Supp. 226, 237 n. 9 (D.N.J.1990). Both the September Order and *Midlantic* are consistent with the holdings of the New Jersey Supreme Court.[13]

The only authority defendants cite for the view that a negligent misrepresentation action will not lie on behalf of the general investing public is *In re UJB Financial Corp. Shareholder Litigation*, No. 90-1569, Slip Op. at 11–12 (D.N.J. Jan. 22, 1991). Because the *UJB* court does not specify whether the general public was the intended addressee or only a third party recipient of defendants' representations, it cannot be determined whether there is any conflict between that court's holding and the September Order. In any event, the *UJB* court was not directly presented with the question of the viability of a negligent misrepresentation claim brought by a member of the general investing public, to whom a misrepresentation was directly made by defendant. Accordingly, the *UJB* decision does not offer a substantial ground for difference of opinion with the September Order.

However, even if *UJB* were in conflict with this Court's Order, this issue would not justify certification. Appeal of the negligent misrepresentation claim would be unlikely to resolve any significant issue in this litigation, and hence offers no prospect of materially advancing its termination.

*Conclusion*

None of the issues raised by defendants satisfy the criteria for certification. Accordingly, for the foregoing reasons, defendants' motion to certify this Court's Order of September 4, 1991 is hereby denied.

---

13. The *Rosenblum* decision, relied upon by defendant, concerns a party's liability to third parties who rely on its representations, rather then a party's liability to those to whom it directly makes false representations. *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 352–53, 461 A.2d 138 (1983); *see also Karu v. Feldman*, 119 N.J. 135, 574 A.2d 420 (1990).