717 F.2d 96
 Fed. Sec. L. Rep. P 99,487
Constantin CHRISTIDIS, Ind. on Behalf of Himself and All
Others Similarly Situated
v.
FIRST PENNSYLVANIA MORTGAGE TRUST; Associated Advisers,
Inc.: First Pennsylvania Corporation; First Pennsylvania
Bank, N.A.; Peat, Marwick, Mitchell & Co.; John R.
Bunting; Ralph W. Erwin, Jr.; Anthony G. Felix, Jr.;
Philip C. Ehlinger; Samuel Evans, III; Daniel S. Ahearn;
Edmund N. Bacon; Richard W. Baker, Jr. and M. Todd Cooke.
Appeal of Constantin CHRISTIDIS.
 No. 82-1824.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 1, 1983.
Decided Sept. 12, 1983.
Rehearing and Rehearing In Banc Denied Oct. 6, 1983.
 
 Stephen G. Console, Lewis Kates (argued), Kates, Livesey & Mazzocone, P.C., Philadelphia, Pa., for appellant.
 Robert S. Ryan (argued), Lawrence P. Byrnes, Drinker, Biddle & Reath, Philadelphia, Pa., for appellees, Samuel Evans, III, Daniel S. Ahearn, Edmund N. Bacon, Richard W. Baker, Jr. and M. Todd Cooke.
 Joseph W. Swain, Jr. (argued), Philadelphia, Pa., Victor M. Earle, III, Anthony J. Costantini, New York City, for appellee, Peat, Marwick, Mitchell & Co.; John E. Caruso, Mary F. Platt, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., of counsel.
 Edward F. Mannino (argued), Carl G. Roberts, Marguerite S. Walsh, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellees, First Pennsylvania Corp., First Pennsylvania Bank N.A. and Associated Advisers, Inc.
 Charles A. Crocco, Jr., Lunney & Crocco, New York City, for appellee, First Pennsylvania Mortg. Trust.
 Matthew M. Strickler, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellees, Ralph W. Erwin, Jr., Philip C. Ehlinger and Anthony G. Felix, Jr.
 Howard Gittis, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellee, John R. Bunting.
 Before GIBBONS and HUNTER, Circuit Judges, and COHEN, District Judge*.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Constantin Christidis appeals from a final judgment dismissing his third amended class action complaint for failure to state a cause of action. The complaint seeks money damages on behalf of a class of purchasers of shares of First Pennsylvania Mortgage Trust (the Trust) who purchased shares on or before December 29, 1977. It alleges that in issuing annual reports of the financial condition of the Trust for the fiscal years ending July 31, 1974, 1975, 1976 and 1977, the defendants violated the anti-fraud provisions of several federal securities acts.[1] The gravamen of Christidis' charge is that those financial statements understated the reserves which the Trust should have accrued for bad debts. The trial court held that the complaint did not allege fraud with the specificity required by Fed.R.Civ.P. 9(b),[2] and dismissed it prior to permitting discovery. We affirm.
 
 I.
 The Allegations of the Complaint
 
 2
 Christidis' complaint contains general allegations summarized in this paragraph. The Trust was established in 1970 to invest in a diversified portfolio of short term development and construction first mortgage loans, other types of first mortgage loans, "wrap-around," interim, and junior mortgage loans. The Trust also invested in equity interests in real estate acquired through or in lieu of foreclosure. Until its annual report for the fiscal year ending July 31, 1977 the Trust maintained and reported a composite or aggregated reserve for possible losses, making no breakdown between reserves for losses on loans and reserves for losses on equity interests acquired through or in lieu of foreclosure. In its annual reports for fiscal years 1975, 1976 and 1977 the Trust represented "that the allowance for losses it had established and maintained for possible losses on loans it had outstanding and on property acquired by foreclosure was reasonable in the circumstances and determined in accordance with then existing reasonable and proper accounting practices and procedures when in fact it was not." App. 127. It also represented that in the opinion of the Trustees, the amount of the reserve is adequate to cover any losses which may be reasonably anticipated at the time. App. 129. In the notes to the financial statement Peat, Marwick, Mitchell & Co. disclosed various steps which were taken by the Trust to establish the value of real estate acquired by foreclosure including independent appraisals and market studies. App. 130.
 
 
 3
 The material allegation, therefore, is that the Trust made a misrepresentation that the reserve was established in accordance with existing reasonable accounting practices and procedures. Pressed through several successive motions for particulars as to how the 1975, 1976 and 1977 statements departed from those practices and procedures, Christidis added specific allegations respecting the deficiencies in each annual report.
 
 
 4
 The 1974 annual report is alleged to be a false representation of reasonable accounting practices and procedures in that:
 
 
 5
 (a) It reported a beginning balance for its composite allowance for possible losses on loans and property acquired by foreclosure of $421,365, additions thereto during that year of $479,790, which said additions were charged as an expense against current income, and an ending balance of $893,425 after taking into account a write-off of $10,730.
 
 
 6
 (b) It knew or should have known that the opening balance, additions to and the closing balance for its allowance for possible losses were understated and did not reflect the actual losses Trust Defendant had already sustained in the value of its loan and property acquired through foreclosure accounts, that the losses it had sustained thereto during that year were greater than those which it had accounted for and that its closing balance for its allowance for possible losses were inadequate resulting in a material and substantial overstating of its assets and profits.
 
 
 7
 (c) It knew and should have known that its use of and its reported composite allowance for possible losses on its loans and property acquired through foreclosure accounts were deceptive, incorrect and false, and cloaked the fact that its said allowance represented an accounting by it of its loans at greater than face or principal amount to the extent of $15,774.687 at the beginning of that year and of $15,317.687 at the end thereof when in fact its loans were subject to recognized and substantial losses; further that its reported allowance for possible losses for property acquired by foreclosure was substantially understated resulting in said property being accounted for at substantially more than its recognized value.
 
 
 8
 (d) It knew or should have known that by so doing it not only had materially overstated its assets and understated its losses but had improperly deferred recognition of actual losses it had incurred.
 
 
 9
 Complaint, p 47, App. 130-32. The allegations with respect to the 1974 annual report are repeated, with different numbers, for the annual reports for 1975, 1976 and 1977.[3] Those allegations do not differ in substance. Thus for purposes of analysis we can focus on the allegations in paragraph 47 with respect to the 1974 annual report.
 
 II.
 
 10
 Subparagraph (a) of paragraph 47 establishes no more than the opening and closing amounts of the reserve. Subparagraph (b) alleges that the opening balance, additions, and closing balance did not reflect "actual losses ... sustained in the value of its loan and property." In context, the term "actual losses" is meaningless, for actual losses are reflected elsewhere in a financial statement than in reserves. Thus subparagraph (b) merely reasserts that the estimate for future losses in the opening balance, the additions to, and the closing balance were wrong. The subparagraph says nothing about the method whereby those estimates were made or the manner in which that method departed from reasonable accounting practices and procedures.
 
 
 11
 Subparagraph (c) alleges that the Trust knew or should have known that its use of a composite allowance for possible losses on loans and property acquired through foreclosure was deceptive, and resulted in reporting its loans at greater than face or principal amount. Subparagraph (c) does not, however, set forth in what manner, in the year in question, the use of a composite loss reserve for loans and equity interests was a departure from reasonable accounting practices. The allegation that the "loans were subject to recognized and substantial losses" is meaningless, for the purpose of the reserve is to anticipate losses not yet recognized. The allegations that the allowance for possible losses for property acquired by foreclosure was substantially understated "in said property being accounted for at substantially more than its recognized value" is also meaningless, for it does not tell what is meant by "recognized value." Thus the quoted language cannot be construed as an allegation that the property appraisals relied on were either knowingly false, or so facially unreasonable as to be beyond the realm of reasonable reliance for accounting practices.
 
 
 12
 Subparagraph (d) merely states the conclusion that by doing what is alleged in subparagraphs (b) and (c) the defendants should have known they were materially overstating assets and understating losses. Thus it adds nothing to subparagraphs (b) and (c).
 
 III.
 
 13
 The defendants, relying on certain cases decided in the Second Circuit,[4] urge that we should read Rule 9(b) as a special pleading rule designed to facilitate the disposition, before discovery, of what they refer to as strike suits in the securities industry. We find more appropriate guidance, however, closer to home. In Cramer v. General Tel. & Electronics Corp., 582 F.2d 259, 272 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979), we noted the distinction between the first and second sentences of Rule 9(b). The second sentence requires only that "intent, knowledge, and other conditions of mind ... be averred generally." Id. at 273. The first sentence "requires that the complaint state with particularity the circumstances constituting the fraud." Id. at 272.
 
 
 14
 Historically, Rule 9(b) is derived from English common law practice. See C. Clark, Code Pleading Sec. 48, at 312 (2d ed. 1947); English Rules for the Supreme Court under the Judicature Act, Order 19, Rule 6, The Annual Practice (1937). As Judge Clark noted:
 
 
 15
 [i]t has been the rule under both common-law and code pleading that allegations of fraud must be made with a great degree of particularity. Thus, it is said that the elements of fraud in an action for false representation are five, as follows: (1) A specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his damage.
 
 
 16
 C. Clark, Code Pleading Sec. 48, at 312 (2d ed. 1947). It is the identification of these elements of a fraud claim which the first sentence of Rule 9(b) requires. The rule applies not only to fraud actions under federal statutes, but to fraud claims based on state law. In applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud. Moreover, in applying the rule, focusing exclusively on its "particularity" language "is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 407 (1969).
 
 
 17
 In this instance, however, no matter how flexibly we apply the first sentence of Rule 9(b), it requires that we affirm the dismissal of the complaint. Its defect is the complete absence of any disclosure of the manner in which, in establishing reserves for bad debts in the financial statements relied upon, the defendants knowingly departed from reasonable accounting practices. Those reserves were estimates or predictions of the likely collection or liquidation experience of the Trust in the future. They could be fraudulent only if, when they were established, the responsible parties knew or should have known that they were derived in a manner inconsistent with reasonable accounting practices. What those practices are and how they were departed from is nowhere set forth. In Part II above we have parsed the allegations of paragraph 47 to find the alleged inconsistency from the undisclosed norm. We cannot find it.
 
 IV.
 
 18
 The trial court concluded, correctly, that the complaint fails to state a cause of action for fraud. The judgment appealed from will be affirmed.
 
 
 
 *
 Hon. Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The defendants include: the Trust, a real estate investment trust organized in 1970; First Pennsylvania Corporation, a Pennsylvania banking corporation; First Pennsylvania Bank, N.A., a national banking corporation; Associated Advisers, Inc., the investment manager of the Trust; Peat, Marwick, Mitchell & Co., the Trust's outside auditor; and John R. Bunting, Ralph W. Erwin, Jr., Anthony G. Felix, Jr., Philip C. Ehlinger, Samuel Evans, III, Daniel S. Ahearn, Edmund N. Bacon, Richard W. Baker, Jr., and M. Todd Cooke, the trustees of the Trust in the relevant years. The statutes relied on are section 17(a) of the Securities Act of 1933, 15 U.S.C. Secs. 77q(a) (1976), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1976) and section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78t(a) (1976)
 
 
 [2]
 Rule 9(b) provides:
 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
 Fed.R.Civ.P. 9(b).
 
 
 [3]
 The complaint also makes allegations about annual reports issued subsequent to December 29, 1977. Those allegations are not material to the fraud charge, since they could not have been relied on by the class members Christidis seeks to represent, except to the extent that they might shed light upon the manner in which the 1974-1977 reports misrepresented that the reserves for those years had been established in accordance with reasonable accounting practices and procedures. The allegations add nothing in that respect
 
 
 [4]
 See, e.g., Billard v. Rockwell International Corp., 683 F.2d 51, 57 (2d Cir.1982); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir.1982); Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); Denny v. Barber, 576 F.2d 465, 469 (2d Cir.1978); Brew v. Philips, Appel & Waldren, Inc., [1981 Transfer Binder] Fed.Sec.-L.Rep. (CCH) p 97865 (S.D.N.Y.1981); Skubik v. Leeds, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 97629 (S.D.N.Y.1980); Seiden v. Butcher, 458 F.Supp. 81, 83 (S.D.N.Y.1978); Fein v. Shearson Hayden Stone, Inc., 461 F.Supp. 137, 141 (S.D.N.Y.1978); Morgan v. Prudential Group, Inc., 81 F.R.D. 418, 423 (S.D.N.Y.1978)