**Eric G. THOMAS, on behalf of himself and all others similarly situated**

v.

**Jack TRAMIEL, Irving Gould, and Commodore International Ltd.**

Civ. A. No. 84-619.

United States District Court, E.D. Pennsylvania.

April 15, 1985.

Greenfield & Chimicles, Haverford, Pa., for plaintiff and the class.

Marvin A. Schwartz, Sullivan & Cromwell, New York City, for Commodore Intern.

Phillip Kircher, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Tramiel.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this securities fraud case, plaintiff Eric Thomas, who owns shares in defendant Commodore International ("Commodore"), alleges that defendants materially misrepresented Commodore's financial and operating condition during the summer and fall of 1983. Defendant Commodore has moved to dismiss Mr. Thomas' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The two individual defendants, Jack Tramiel and Irving Gould, have joined Commodore's motion. In addition, defendants Commodore and Gould have moved for attorneys' fees in a predecessor case. Finally, plaintiff Thomas has moved to compel production of documents and for class certification.[1]

### I. *Defendants' Motion to Dismiss*

Commodore identifies its motion as one brought under both Rule 12(b)(6), which provides for motions for failure to state a claim upon which relief may be granted, and Rule 9(b), which requires that fraud be pleaded with specificity. Commodore does not, however, contest the substantive sufficiency of the complaint under either the federal securities laws or Pennsylvania common law. Rather, Commodore argues that, because the standards which Rule 9 lays down for pleading fraud are not met by the complaint in this case, the complaint

---

1. Mr. Thomas is the sole named plaintiff. In moving for class certification, Mr. Thomas seeks to represent all persons who purchased shares in Commodore International between July and October of 1983. In this Memorandum, the term "plaintiff" refers to Mr. Thomas only.

must be dismissed for failing adequately to plead a cause of action. *See, e.g., Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms*, 73 F.R.D. 420, 424 (E.D.Pa. 1977).

### A. *The Fraud Allegations in the Complaint*

The complaint alleges that, by concealing its true (unhealthy) condition from investors during the summer and fall of 1983, Commodore violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 75 C.F.R. § 240.10b–5. Complaint ¶¶ 1, 21–32. The same alleged conduct forms the basis for plaintiff's claims of fraud and negligent misrepresentation under Pennsylvania law. *Id.* ¶¶ 37–43. The heart of these allegations is paragraph 27 of the complaint, which lists the categories of omissions which allegedly misled Commodore investors. That paragraph begins by describing, in broad fashion, the nature and timing of the misleading statements:

> During the Class Period [elsewhere defined as "beginning on or before July 1, 1983, through at least October 28, 1983," Complaint ¶ 9], the individual defendants caused Commodore to issue public reports, releases and statements, which were materially false and misleading in violation of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. Said reports, releases and statements were materially false and misleading in that they omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. These included, among other things, the following:

Complaint ¶ 27. With that introduction, plaintiff launches into a list of categories of material information which were allegedly concealed from the investing public. Most of the items listed are alleged omissions going to Commodore's manufacturing and marketing operations:

(a) that Commodore had no sales staff outside its local headquarters and that it had fired its national network of independent sales representatives;

(b) that Commodore could not produce enough disk drives for the 64 to meet current delivery obligations and many of those produced and distributed have been materially defective;

(c) that a number of the hardware components of the 64 system were prematurely rushed to market and, as a result thereof, operations and quality problems have developed on a large scale;

(d) that as a result of its questionable manufacturing, marketing and distribution practices, Commodore was alienating large numbers of its retail distributors;

(e) that Commodore cut back on the advertising support it provided to retailers which, in turn, impacted upon their interest in and willingness to market the 64;

(f) that large numbers of Commodore retailers were frustrated with their dealings with the Company and were refusing to sell its products; ...

(h) that Commodore's belated effort to develop software for the 64 and other hardware products has expanded beyond management's ability to control the activities of the approximately 100 staff members working in this area.

(i) that many of Commodore's principal executives, including, Bob Lance (President—North American Operations), Myrddin Jones (Marketing Vice President), Bill Miller and Roy Thomas (Chip Making Executives) had "resigned" or been summarily terminated and, as a result thereof, the Company has been left without high-ranking leadership skilled in the computer business and without a clear product strategy for the future.

(j) that several of Commodore's "third generation" product developments upon which the financial community has been lead to believe is keyed to the Company's success, have been terminated, principally the MAX system. With respect to this system, Commodore has sustained severe

keyboard problems and is involved in litigation with its supplier.

(k) that Commodore has violated federal antitrust laws in its relationship with its dealers including, inter alia, having set up illegal "tie-in" requirements which specify that all orders be composed of 40% computer hardware, 40% peripherals and 20% software. In addition, the Company has established $10,000 minimum purchase requirements, all of which have further exacerbated Commodore's rapidly weakening dealer network, which are the lowest priority in the Company's distribution scheme.

(*l*) that Commodore's dealers have commenced anti-trust and related litigation in increasing numbers both in this District and elsewhere and a coalition of dealers have been formed called "The Coordinating Committee for Commodore Law Suits".

(m) that the Company is engaging in questionable transfers of funds to locations outside the United States and is in the process of relocating its accounting functions to Hong Kong, out of reach of United States government agencies.

*Id.* In addition to this list of undisclosed material information, plaintiff also alleges that Commodore overstated its earnings, assets, and net worth by (1) including defective and obsolete goods in its inventories of finished goods, (2) neglecting to write off the failed effort to develop a "computer-on-a-chip," and (3) failing sufficiently to account for record-level customer returns of Commodore products. *Id.* ¶ 27(g).

Commodore contends that these allegations fail to satisfy the standard for specificity which Rule 9 establishes, in that they neither (1) identify the documents which were misleading and on which plaintiff relied, nor (2) sufficiently describe the information which Commodore allegedly concealed.

### B. *Application of Rule 9(b)*

■ Commodore argues that Rule 9(b) requires a securities fraud plaintiff to list the documents whose misleading contents are said to give rise to a fraud claim. No such hard-and-fast rule is fairly derived from the text of Rule 9(b), which states simply:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). As its text suggests, the Rule is designed in large part to ensure that those defending fraud actions are protected from the filing of vague complaints to which no intelligent response is possible. *See, e.g., Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984); *Kimmel v. Peterson,* 565 F.Supp. 476, 481 (E.D.Pa. 1983).[2] This purpose is necessarily ill-served by mechanical requirements which, while appropriate to some cases, would bar the courthouse door to parties injured by misrepresentations whose precise sources cannot easily be uncovered. *See Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 99–100 (3d Cir.1983) ("in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules' ") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)); *Alfaro v. E.F. Hutton & Co.,* 606 F.Supp. 1100, 1107–1108 (E.D.Pa.1985). Instead, the Rule requires a more generous approach, keeping in mind that added specificity as to some of the "circumstances constituting fraud" may lessen the need for detail as to others. As our Court of Appeals recently stated:

**2.** *Cf.* Sovern, *Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases,* 104 F.R.D. 143, 145–47 (1985) (contending that Rule 9(b) is a needless carry-over from English common law practice); Note, *Pleading Securities Fraud Claims with Particularity Under Rule 9(b),* 97 Harv.L. Rev. 1432, 1439 & n. 38 (1984) (concluding that, in securities cases, courts apply Rule 9(b) chiefly to deter "strike suits").

Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984). In *Seville*, the plaintiff alleged that a group of individual and corporate defendants fraudulently induced the plaintiff to enter into a series of sales contracts for several hundred pieces of machinery. Plaintiff sued under RICO. The district court dismissed the RICO claim for failure to plead fraud with sufficient particularity, finding "the allegations of fraud ... deficient because Seville did not describe the date, place or time of the phone calls and letters that defendants allegedly used in furtherance of their fraudulent scheme." *Id.* The Court of Appeals reversed, noting that the plaintiff had (1) identified "with great specificity" the various items of machinery which were involved in the alleged fraud, and (2) set forth the content (though not the precise words) of the alleged misrepresentations. *Id.* The complaint's specificity as to these matters in effect compensated for its lack of specificity as to the particular phone calls and letters through which the alleged fraud was carried out.

*Alfaro v. E.F. Hutton*, 606 F.Supp. 1100 (E.D.Pa.1985), is to the same effect. In *Alfaro*, I found that the large number of plaintiffs, the length of time during which the alleged fraud was committed and the oral nature of the alleged misrepresentations were all relevant to the question whether fraud had been sufficiently pleaded under Rule 9(b). At 1107–1109. *See also In re Catanella and E.F. Hutton & Co. Securities Litigation*, 583 F.Supp. 1388, 1398 (E.D.Pa.1984) ("[w]hen the transactions are numerous and take place over an extended period of time, less specificity is required"); *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 388 (S.D.N.Y.1973) ("[a] strict application of Rule 9(b) in class action securities fraud cases could result in substantial unfairness to persons who are the victims of fraudulent conduct"). This approach accords with the Third Circuit's admonition to construe Rule 9 in light of the flexibility with which the Federal Rules govern civil pleadings. *Christidis, supra*, 717 F.2d at 99–100. *See also Denny v. Carey*, 72 F.R.D. 574, 578 (E.D.Pa.1976) ("Rule 9(b) requires slightly more notice than would be forthcoming under Rule 8"). It also makes good sense: a too-rigorous application of Rule 9 would not only bar worthy claims but also encourage unduly long and complex pleadings. *duPont v. Wyly*, 61 F.R.D. 615, 631–32 (D.Del.1973).

■ With these general principles in mind, I find that the complaint in this case is sufficient under Rule 9(b). To be sure, plaintiff's list of omissions in paragraph 27 of the complaint is not a model pleading that securities lawyers ought to emulate. But the problems with paragraph 27 are due more to what is present than to what is missing. Certain of plaintiff's claimed omissions could not, standing alone, permit defendants to know the nature of the fraud which they are charged with committing. *See* Complaint ¶ 27 (d, f, h). Reading the complaint as a whole, however, I find that it adequately conveys the substance of the information which defendants are said to have concealed.

■ Nor are plaintiffs required to list each document in which these omissions occurred. *duPont v. Wyly, supra*, 61 F.R.D. at 631–32; *Denny v. Carey, supra*, 72 F.R.D. at 579.[3] Plaintiff's claim is that

---

**3.** Defendants rely on *Summers v. Lukash*, 562 F.Supp. 737 (E.D.Pa.1983), for the proposition

that such a list *is* required. To the extent that *Summers* stands for that proposition, I think its

defendants purposefully concealed certain information from investors during the summer and fall of 1983. Such a claim inherently involves every document through which defendants communicated with their investors. Plaintiffs need not list every press release or financial statement, describe its contents, and explain how the absence of certain information rendered it misleading. "Such prolixity is not compelled—indeed is discouraged—by the Federal Rules of Civil Procedure." *duPont v. Wyly, supra,* 61 F.R.D. at 631. It is enough that the information said to have been concealed is described with some particularity, and that the time frame during which the concealment operated is relatively short.

For these reasons, I conclude defendants' motion to dismiss should be denied.

## II. *Defendants' Motion for Attorneys' Fees*

■ Defendants Commodore and Gould have moved, in this action, for attorneys' fees incurred in *Glassman v. Gould,* Civil Action No. 83–5234 (E.D.Pa.), a case assigned to Judge Bechtle. The complaint in *Glassman* was almost identical to the complaint in this case; the same counsel were involved in *Glassman* as are involved here. During the pendency of a motion to dismiss similar to the one before me in this case, counsel filed a stipulation dismissing *Glassman.* The stipulation was "without prejudice," and provided that "each side [was] to bear its own costs and attorneys' fees." *Glassman v. Gould, supra,* Stipulation of Dismissal (Jan. 18, 1984).

Defendants contend that the filing of the complaint in *Glassman* violated Federal Rule of Civil Procedure 11, and that plain-

tiff's counsel should accordingly be required to pay the expenses of defending *Glassman.* There are two difficulties with this argument. First, *Glassman* is the most appropriate case in which to move for attorneys' fees expended in that case.[4] No such application was filed in *Glassman.* Second, defendants' argument appears to be vitiated by the Stipulation, in which defendants agreed to bear their own costs in *Glassman.*

Defendants further contend that the filing of the complaint in *this* case violated Rule 11. However, defendants seek compensation for their defense of *Glassman,* not for their defense of *Thomas.* Moreover, the Stipulation dismissing the *Glassman* case was without prejudice; the filing of the complaint in this case accordingly was not a violation of the terms of the *Glassman* Stipulation. For these reasons, the motion for attorneys' fees will be denied.

## III. *Plaintiff's Motions to Compel and for Class Certification*

Plaintiff has moved (1) to compel production of certain documents and (2) for class certification. Defendants have not responded to either motion, but rather seek to stay determination of plaintiff's motions pending resolution of the motion to dismiss. Because I have now determined that the motion to dismiss must be denied, I will direct defendants to respond forthwith to plaintiff's motions.

authority is questionable. The court in *Summers* relied on *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111 (2d Cir.1982), for its holding that the plaintiff was obliged specifically to identify the documents rendered misleading by the alleged concealment. *Summers, supra,* 562 F.Supp. at 740. In a case decided several months after *Summers,* however, the Third Circuit declined to follow *Decker* and similar cases counseling a restrictive view of Rule 9(b). *Christidis, supra,* 717 F.2d at 99 & n. 4.

**4.** Defendants correctly note that they may seek attorneys' fees in a separate action. It does not follow, however, that attorneys' fees for *Glassman* may be sought in this case. Mr. Glassman is not a party to this litigation. It would be inappropriate for me to consider matters which may directly affect Mr. Glassman's interests without those interests being formally represented.