SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

James S. SALTZMAN, Defendant.

No. CIV.A. 00–2468.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 2000.

Gary E. Jackson, Celeste Chase, U.S S.E.C., Philadelphia, PA, for plaintiff.

Alexander D. Bono, Frederick D. Lipman, Timothy D. Katsiff, James J. Reynolds, Blank Rome Comisky & McCauley, LLP, Philadelphia, PA, for defendant.

Ronald H. Surkin, Richard Di Santi, Gallagher, Schoenfeld & Surkin, Media, PA, for movant.

## MEMORANDUM and ORDER

ANITA B. BRODY, District Judge.

Defendant James B. Saltzman moves to dismiss for failure to state a claim pursuant to Federal Rules of Procedure 12(b)(6) and 9(b). Saltzman alternatively moves for a more definite statement. Having considered the defendant's motion, the response of the plaintiff, Securities and Exchange Commission ("SEC"), and the written and oral arguments of the parties in support of their positions, I conclude that the Defendant's Motion to Dismiss or for a More Definite Statement should be denied.

The Securities and Exchange Commission ("SEC") pleads two causes of action against Saltzman. First, the SEC alleges violations of Section 17(a) of the Securities

Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) [1]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) [2], and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5.[3] The second cause of action alleges violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6(1) and 80b–6(2).[4] The SEC asks the court to enjoin Saltzman from committing those violations, order him to disgorge all unlawfully obtained proceeds, and order him to pay civil penalties.

## I. FACTUAL and PROCEDURAL BACKGROUND

At the time of the alleged violations, James Saltzman was both the managing general partner and a limited partner of Saltzman Partners L.P., a private investment partnership. The partnership was formed in 1992 and includes 36 limited partners. Saltzman, while managing general partner, maintained exclusive control of the partnership's investment portfolio, bank account, and brokerage accounts. In return for his services as managing partner, Saltzman received an annual performance fee equal to 20% of the difference between the current cumulative portfolio value as of the end of any fiscal year and the preceding highest cumulative portfolio value. From 1985 to 2000, Saltzman earned at least $1.3 million in performance fees.

In 1994, the SEC alleges, Saltzman began taking out loans from the partnership

1. Section 17(a) provides:

§ 77q. Fraudulent interstate transactions
(a) Use of interstate commerce for purpose of fraud or deceit
It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a).

2. Section 10(b) provides:

§ 78j. Manipulative and deceptive devices
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

3. Rule 10b–5 provides:

§ 240.10b–5. Employment of manipulative and deceptive devices
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality or interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

4. Section 206 provides, in relevant part:

§ 80b–6. Prohibited transactions by investment advisers
It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud any client or prospective client;
(2) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client[.] 15 U.S.C. § 80b–6.

in violation of the partnership agreement. From 1994 to February 2000, Saltzman allegedly took out several loans totaling $1.78 million. The partnership agreement authorized the managing general partner to make loans to any requesting partner, including himself. However, such loans had to meet the requirements provided in section 11 of the partnership agreement. During the relevant time period, section 11 set forth the following requirements: 1) the aggregate principal amount of loans outstanding to any partner could not exceed 50% of the partner's capital account; 2) loans were to bear interest, payable monthly; 3) loans were due and payable no later than 60 days after the end of the fiscal year in which the loan was made; and 4) all loans had to be requested in writing and evidenced by a note. As managing general partner and the person who provided information about the partnership to current and prospective investors, the SEC alleges, Saltzman knew or was reckless in not knowing the terms of the partnership agreement, and therefore knew or was reckless in not knowing that his personal loans violated the agreement.

The SEC alleges that Saltzman knowingly violated several of the agreement's loan requirements, and therefore misappropriated $1.78 million from the partnership. First, Saltzman's loan total exceeded 50% of his capital account balance with the partnership. As of December 31, 1997, Saltzman had a balance of $564,484 in his capital account, which permitted him to take out $282,242 in loans; however, at that time, he carried an outstanding loan balance of $1,296,476 including principal and interest. Although his capital account balance did not increase over the next two years, Saltzman continued to take out loans from the partnership, bringing his total up to $1.78 million by February 5, 2000. Second, Saltzman did not make any interest payments on the loans. Third, Saltzman did not repay outstanding loan balances within 60 days of the end of the fiscal year in which the loans were made. Finally, the SEC alleges that Saltzman did

not execute the documentation necessary to evidence the loans; nor did he securitize his loans. By failing to repay the money he misappropriated from the partnership, the SEC charges, Saltzman defrauded the limited partners in violation of federal securities law.

The SEC further charges that Saltzman misled the limited partners by failing to disclose material facts in the partnership's annual financial statements. Saltzman, as managing general partner, created the financial statements or caused the financial statements to be created; he therefore knowingly or recklessly distributed materially misleading statements. The SEC alleges that the audited financial statements for fiscal year 1998 misled the limited partners in three ways. First, note 2 to those statements stated, correctly, that several limited partners had taken out loans from the partnership; however, note 2 did not disclose the fact that loans attributable to Saltzman represented over 80% of all outstanding loans. Second, note 2 did not disclose the fact that Saltzman's loans were improper—that he had taken out loans far in excess of the authorized amount, had not paid monthly interest, and had not timely repaid his loans. Third, the financial statements characterized the interest due on the loans as investment income, giving the partners the false impression that the interest attributable to Saltzman's loans was collectible.

In addition, the SEC alleges, at the beginning of calendar years 1998, 1999, and 2000, Saltzman encouraged and accepted reinvestment in the partnership fund while failing to disclose his misappropriation of the partnership's money. At the beginning of each year, limited partners have the option of withdrawing all or part of their capital accounts from the partnership fund. Saltzman violated his fiduciary duty as an investment adviser by failing to disclose information necessary for the limited partners to make informed decisions on reinvestment in the partnership.

This action was filed on May 12, 2000. Two days before filing, the partnership amended section 11 to authorize unsecured loans to the managing partner of up to $2 million. The partnership also removed Saltzman from the position of managing general partner and committed the partnership's accounts to the stewardship of an independent accounting firm.

On May 23, 2000, the parties agreed to enter into an order of preliminary injunction and other equitable relief. On November 2, 2000, after hearing oral argument, I vacated the section of the preliminary injunction related to the freeze on Saltzman's assets. On December 8, 2000, I stayed discovery pending resolution of the motion now before me.

## II. DISCUSSION

Defendant, James Saltzman, has filed a motion to dismiss under Federal Rules of Procedure 12(b)(6) and 9(b), or, in the alternative, for a more definite statement. In his motion, Saltzman challenges the legal sufficiency of both causes of action brought against him. Saltzman contends that the first cause of action does not state a claim cognizable under the fraud provisions of the federal securities laws. As for the second cause of action, Saltzman argues that he is not an "investment adviser" as defined by the Investment Advisers Act, and therefore the claim must fail.

### A. Standard of Review

#### 1. Rule 12(b)(6)

Rule 12(b)(6) permits the court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). In order to survive the Rule 12(b)(6) motion, the SEC must provide enough evidence to support its claims; however, it does not need to demonstrate that it will prevail on the merits. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The claim may be dismissed only if the SEC cannot demonstrate any set of facts in support of the claim that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Williams v. New Castle County*, 970 F.2d 1260, 1266 (3d Cir.1992). In considering the motion to dismiss, the court must accept as true all factual allegations in the complaint and all reasonable inferences that may be drawn therefrom, construing the complaint in the light most favorable to the SEC. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229; *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir.1997).

#### 2. Rule 9(b)

Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally." Fed.R.Civ.P. 9(b). To allege fraud, a plaintiff generally must plead (1) a specific false representation of material fact, (2) knowledge of its falsity by the person who made it, (3) ignorance of the falsity by the person to whom it was made, (4) the maker's intention that it should be acted upon, and (5) detrimental reliance by the plaintiff. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1421 (3d Cir.1997) (citing *In re Westinghouse Securities Litigation*, 90 F.3d 696, 710 (3d Cir.1996)).

In the securities fraud context, a complaint must plead the circumstances of the fraud with adequate particularity to place defendant on notice of the precise misconduct with which they are charged. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 790 (3d Cir.1984). The Third Circuit has confirmed that the first sentence of Rule 9(b) requires a plaintiff to identify the elements of a fraud claim, but also has rejected a narrow focus on the particularity requirement, which "fails to take account of the general simplicity and flexibility contemplated by the rules." *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983) (quoting C. Wright and

A. Miller, 5 Federal Practice and Procedure § 1298, at 407 (1969)); *see also In re Craftmatic Securities v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989). Plaintiffs in securities fraud cases are not bound to a particular pleading formula, but must find some means of injecting precision and some degree of substance into their allegations. *Seville Industrial,* 742 F.2d at 791.

**B. First Cause of Action: Violations of the Antifraud Provisions of the Federal Securities Laws**

The first cause of action in the complaint charges Saltzman with violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b–5 thereunder of the Exchange Act, commonly referred to as the antifraud provisions. See *In the Matter of Bauer,* 1999 WL 4904 at *22 (S.E.C. Jan. 7, 1999). Section 17(b) makes it unlawful, "in the offer or sale" of securities:

1) to employ any device, scheme or artifice to defraud, or

2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). Section 10(b) and Rule 10b–5 thereunder proscribe similar practices "in connection with the purchase or sale" of any security. 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b–5.

■ The antifraud provisions have been interpreted as requiring plaintiff, beyond alleging the jurisdictional nexus to interstate commerce, to plead some variation of the following:

1) That defendant made material misrepresentations or omissions where he had a duty to speak, or employed a fraudulent device;

2) with scienter;[5]

3) in connection with the offer, sale or purchase of securities;

4) and that there was detrimental reliance on defendant's misrepresentations or omissions.

*See Burlington Coat,* 114 F.3d at 1417; *In re Phillips Petroleum Securities Litigation,* 881 F.2d 1236, 1244 (3d Cir.1989); *Oran v. Stafford,* 226 F.3d 275, 282 (3d Cir.2000); *SEC v. Monarch Funding Corp.,* 192 F.3d 295, 308 (2d Cir.1999).

**1. Material Misrepresentations or Omissions**

■ Breach of fiduciary duty, in the absence of deception, misrepresentation, or nondisclosure, does not violate the federal antifraud provisions. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). An alleged failure to disclose merely negligent management does not state a claim under federal securities law. *Craftmatic,* 890 F.2d at 639. Not all misinformation is actionable; to state a claim, plaintiff must allege material misrepresentations or omissions. *See Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 647 (3d Cir.1980).

The Supreme Court set out its general standard for materiality, now widely used under the federal securities laws, in *TSC Industries, Inc. v, Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).[6] Under that standard, "[a]n omitted fact is material if there is a substantial

---

**5.** While a showing of scienter is required to establish a violation of Section 10(b), Rule 10b–5, and Section 17(a)(1), no such showing is required under Subsections 17(a)(2) and (a)(3). *Aaron v. SEC,* 446 U.S. 680, 701–02, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

**6.** *TSC Industries* involved a claim brought under Section 14(a) of the Exchange Act. The standard of materiality set out in *TSC Industries* was expressly adopted for the Section 10(b) and Rule 10b–5 of that Act in *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id.* at 449, 96 S.Ct. 2126. The standard is objective; it does not matter whether the limited partners of Saltzman L.P. actually would have considered Saltzman's misrepresentations material to their investment decisions. The standard only requires a substantial likelihood that disclosure of the omitted facts would have been viewed by a reasonable investor as having significantly altered the "total mix" of information made available. *TSC Industries,* 426 U.S. at 449, 96 S.Ct. 2126.

The SEC has met it burden under that materiality standard. According to the complaint, Saltzman Partners has assets of approximately $7.9 million. Through undisclosed transfers in violation of the partnership agreement, Saltzman allegedly diverted $1.78 million—over 20% of of those assets—to his personal account. Saltzman did not disclose to the partners that such a large portion of the fund's assets had been diverted to an unproductive investment (Saltzman did not pay the interest accrued on his loans). In response, Saltzman argues that he did disclose the transfers to certain limited partners, who apparently did not disapprove. The test of materiality that the complaint must meet, however, is objective and asks only what a reasonable investor would consider important.

In securities fraud cases, materiality is a fact-specific inquiry. *Basic Inc. v. Levinson,* 485 U.S. 224, 240, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *TSC Industries,* 426 U.S. at 450, 96 S.Ct. 2126 (the issue of materiality demands delicate assessments of the inferences a reasonable investor would draw, and those assessments are peculiarly ones for the trier of fact). A jury could decide that the misrepresentations alleged by the SEC are material to a reasonable investor in Saltzman Partners L.P. Because the trier of fact could find materiality based on the allegations in the complaint, this issue survives the motion to dismiss.

### 2. Scienter

■ To state a claim under the fraud provisions of the federal securities laws, the plaintiff must allege "scienter," a mental state embracing intent to deceive, manipulate or defraud. *Aaron v. SEC,* 446 U.S. 680, 686, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980); *see also Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). To prove scienter, the SEC must show that Saltzman lacked "a genuine belief that the information disclosed was accurate and complete in all material respects." *Phillips Petroleum,* 881 F.2d at 1244 (quoting *McLean v. Alexander,* 599 F.2d 1190, 1198 (3d Cir.1979)). Recklessness can also satisfy the scienter requirement. *Phillips Petroleum,* 881 F.2d at 1244; *Bauer,* 1999 WL 4904 at *22 (citations omitted). Recklessness has been defined as "highly unreasonable" conduct that involves an "extreme departure from the standards of ordinary care," to such an extent that defendant knew or should have been aware of the danger of the conduct. *Id.* at *22.

Saltzman claims that the SEC has not pled scienter adequately. His argument relies primarily on the 1997 Third Circuit case *Burlington Coat,* 114 F.3d 1410. The Third Circuit, reviewing the lower court's dismissal of the case on both 12(b)(6) and 9(b) grounds, held that it was not enough for plaintiffs to generally allege scienter; rather, plaintiffs must allege facts sufficient to give rise to a "strong" inference of scienter to satisfy the pleading requirement. *Id.* at 1422; *see also Suna v. Bailey Corp.,* 107 F.3d 64, 68 (1st Cir.1997); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801, 813–14 (2d Cir.1996). The SEC must allege facts indicating that Saltzman "knew or was reckless in not knowing that his financial statements were misleading." *Burlington Coat,* 114 F.3d at 1422; *Westinghouse Securities,* 90 F.3d at 712. To create the requisite inference, plaintiff must either (1) identify circumstances indicating conscious

or reckless behavior by defendant, or (2) allege facts that suggest both a motive and a clear opportunity for committing the fraud. *Burlington Coat,* 114 F.3d at 1422 (citing *San Leandro,* 75 F.3d at 813).

Under the standard outlined in *Burlington Coat,* the SEC has alleged facts that give rise to a strong inference of scienter. The complaint alleges that Saltzman was the managing general partner and the person who provided information about the partnership to both the limited partners and prospective investors. From those facts one can infer that Saltzman knew the terms of the partnership agreement, including the requirements for loans to partners, and therefore knew that his personal loans violated the agreement. The complaint also alleges that Saltzman was responsible for distributing the partnership's annual financial statements, and that he knowingly and intentionally created false and misleading financial statements for fiscal years 1998 and 1999. Furthermore, the facts suggest that Saltzman, knowing he had violated the partnership agreement, had both a motive to conceal his loan situation, and, as the partner who distributed the financial statements, the opportunity to misrepresent the true state of the partnership's investment portfolio. · Taking those facts and inferences as true, as I must in a 12(b)(6) challenge, I conclude that the SEC has adequately identified circumstances that indicate conscious or reckless behavior by Saltzman.

In addition, as scienter is inherently an issue of fact, resolution of the issue at this phase of the litigation would be premature. *See e.g. Provenz v. Miller,* 102 F.3d 1478, 1490 (9th Cir.1996) ("summary judgment on the scienter issue is appropriate only where there is no rational basis in the record for concluding that any of the challenged statements was made with the requisite scienter." (citations omitted)). As a

reasonable trier of fact could find scienter based on the allegations made in the complaint, I will not dismiss the claim at the pleadings stage.

**3. "In Connection With" the Offer, Sale or Purchase of Securities**

■ The complaint adequately alleges that Saltzman's material misrepresentations and omissions were made in connection with the offer, sale or purchase of limited partnership interests in Saltzman Partners, L.P.[7] First, the complaint alleges that Saltzman created or caused to be created the annual financial statements on which limited partners reasonably relied in making their investment decisions regarding the partnership. Second, Saltzman, as managing general partner, allegedly provided information about the partnership to limited partners and prospective investors. Third, at the beginning of 1998, 1999, and 2000, Saltzman allegedly encouraged the limited partners to reinvest while failing to disclose material facts to them. The SEC has adequately alleged, therefore, that Saltzman's misappropriation of funds and his failure to disclose that misappropriation to current or prospective limited partners was made in connection with the offer, purchase or sale of securities as required by the antifraud provisions.

**4. Reliance**

■ To adequately state its securities fraud claim, the SEC must allege that investors detrimentally relied on Saltzman's conduct. *See Burlington Coat,* 114 F.3d· at 1417, 1421. Saltzman contends that the SEC has not adequately pled the reliance element because the complaint fails to name any of the allegedly defrauded investors. To state a claim for securities fraud under Rule 9(b)[8], a plaintiff is required "to plead with particularity the

---

7. Saltzman has not contested the fact that the limited partnership interests are securities.

8. Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

'circumstances' of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged...." *Seville Industrial,* 742 F.2d at 790.

The SEC has pled reliance with sufficient particularity to merit moving ahead with this claim. While the investors who relied on the alleged misrepresentations are not listed by name, the complaint makes frequent reference to the limited partners of Saltzman Partners, L.P. The limited partners are repeatedly identified as the investors who were allegedly defrauded as a result of Saltzman's conduct. By identifying the set of investors who relied on Saltzman's alleged misrepresentations—the limited partners—the SEC complaint states reliance with sufficient particularity to survive the 12(b)(6) and 9(b) challenges. If, at the end of discovery, Saltzman continues to believe that the SEC cannot sustain its burden on the reliance element, I invite him to raise the issue at summary judgment.

### 5. Conclusion

The SEC complaint satisfies the pleading requirements under Section 17(a), Section 10(b), and Rule 10b–5. Accepting as true all factual allegations and reasonable inferences that may be drawn therefrom, as I must at this stage of the litigation, I find that the SEC has presented sufficient evidence to support its claims under the antifraud provisions. The allegations do not suggest a case of mere mismanagement, as the defendant would have me believe; rather, the SEC presents a set of facts which, if substantiated, show that Saltzman made material misrepresentations and omissions, with scienter, in connection with the offer, sale, or purchase of securities.

### C. Motion for a More Definite Statement Under Rule 12(e)

▮ A motion for a more definite statement pursuant to rule Fed.R.Civ.P. 12(e) will be granted only if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading. *See Fairmont Foods Co. v. Manganello,* 301 F.Supp. 832, 839 (S.D.N.Y.1969); *Wheeler v. United States Postal Service,* 120 F.R.D. 487, 488 (M.D.Pa.1987). Saltzman bases this part of his motion on the fact that the complaint does not name the allegedly defrauded investors.

▮ While the SEC does not list the allegedly defrauded investors by name, Saltzman cannot claim that the complaint is too vague and ambiguous to allow a responsive pleading. The SEC complaint provides detailed allegations of Saltzman's violations of the terms of the partnership agreement, as well as the allegation that the limited partners relied upon Saltzman's misrepresentations and omissions in making their decisions to reinvest. As a practical matter, Saltzman certainly knows the names of the limited partners whom he is accused of defrauding. Furthermore, "Fed.R.Civ.P, 12(e) motions are not a substitute for discovery." *Wheeler,* 120 F.R.D. at 488. Saltzman may obtain the names of the partners interviewed by SEC staff through discovery.

### D. Second Cause of Action: Violation of the Investment Advisers Act

▮ The claim under Section 206 of the Investment Advisers Act fails if Saltzman does not qualify as an "investment adviser" under that Act. Section 202(a)(11) of the Investment Advisers Act of 1940 provides, in relevant part, the following definition of an "investment adviser":

"Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability or investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analysis or reports concerning securities....

15 U.S.C. § 80b–2(a)(11). Saltzman contends that the SEC has not sufficiently alleged that he, for compensation, engaged in the business of investment advising.

Although not yet addressed by the Third Circuit, the Second Circuit has considered the case in which general partners of an investment partnership were sued under the Investment Advisors Act. *See Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir.1977). The court in *Abrahamson* held that the general partner defendants were "investment advisers" within the meaning of section 202(a)(11) of the Act. *See id.* at 870. First, the Second Circuit found that the general partners received "compensation" for managing the partners' investments, as, like Saltzman, they earned a fee equal to 20% of the firm's net profits and net capital gains for each year.[9] *See id.* at 866, 870.

The court in *Abrahamson* then found, on two separate grounds, that the defendants "engage(d) in the business of advising others." First, the defendants issued monthly reports, on which the limited partners could be expected to rely in making their decisions to reinvest in the partnership fund. Second, "wholly aside from the monthly reports, we believe that the general partners as persons who managed the funds of others for compensation are 'investment advisers' within the plain language of Section 202(a)(11)." *Abrahamson*, 568 F.2d at 870. The legislative history of the Investment Advisers Act strengthens that interpretation of the plain language. Congress intended the Act to cover not only those who make recommendations to their clients, but also those who wield management powers over their clients' money. *See Id.* Other provisions of the Act, the Second Circuit concluded, reinforce the point that many investment advisers "advise" their customers by managing the purchases and sales that are made with their clients' money. *See Id.* at 871.

The complaint in this case sets forth facts that qualify Saltzman as an "investment adviser" under the Act. Although Saltzman did not receive a fixed salary as managing general partner, the substantial fees he earned by taking a cut of the fund's annual growth—at least $1.3 million since 1985—must be construed as compensation for his management of the investment partnership. Arguably, Saltzman "engages in the business of advising others" in both of the ways described in *Abrahamson*. First, Saltzman issued annual financial statements on the performance of the partnership fund. The limited partners reasonably could be expected to base their decisions to reinvest, in some part, on that report. The complaint also alleges that Saltzman was the person who provided information about the partnership to current and prospective investors. Second, wholly aside from Saltzman's reporting functions, Saltzman maintained exclusive control over the investment portfolio, brokerage accounts, and bank account of Saltzman Partners, L.P. He made all investment decisions for the portfolio. As the Act intended to embrace those who wield power over their clients' money, as Saltzman did over the investments of the limited partners, the facts alleged qualify Saltzman as an investment adviser.

Saltzman attempts to distinguish his case from *Abrahamson*, relying on the Seventh Circuit's holding in *Wang v. Gordon*, 715 F.2d 1187 (7th Cir.1983). His reliance is misplaced. The *Wang* case involved a general partner who was given a 5% brokerage commission on the gross sales price of partnership real estate. The Seventh Circuit found that the general partner, Gordon, did not qualify as an "investment adviser" under the Act. *Id.* at 1992. Its analysis, however, does not dispute the holding of *Abrahamson*, but simply distinguishes it from the facts of *Wang*:

aged investments also received an annual salary of $25,000.

---

**9.** For some of the time period covered in *Abrahamson*, each general partner who man-

"In *Abrahamson v. Fleschner,* 568 F.2d 862 (2d Cir.1977), the Second Circuit held that general partners in an investment partnership were investment advisers under the Act. *Abrahamson* is distinguishable; there the purpose of the partnership was securities investment, and the general partners were compensated for their management of the limited partners' investments. *Id.* at 870. In the present case, ... Gordon received his brokerage commission for selling the building, not for any investment advice."

*Wang,* 715 F.2d at 1192. The facts of *Abrahamson,* not *Wang,* are on point with those facts now before me. The SEC alleges that Saltzman, as managing general partner, was compensated for his management of the limited partners' investments. As such, he meets the definition of "investment adviser" under Section 202(a)(11) of the Investment Advisors Act.

The SEC has presented sufficient evidence to survive defendant's motion to dismiss the claims under the Investment Advisers Act. Viewing the evidence in the light most favorable to the SEC, as I must, I find that the complaint presents a set of facts that might entitle the SEC to relief. Therefore, Saltzman's motion to dismiss the SEC's claim of violation of the Investment Advisers Act must be denied.

**AND NOW,** this day of December, 2000, it is **ORDERED** that Defendant's Motion to Dismiss or for a More Definite Statement (Docket Entry No. 12) is **DENIED.**

It is **FURTHER ORDERED** that:

1) Discovery shall be completed by January 31, 2001;

2) All dispositive motions shall be filed no later than February 16, 2001;

3) Plaintiff's pretrial memorandum shall be filed by March 2, 2001;

4) Defendant's pretrial memorandum shall be filed by March 9, 2001;

5) This case will be placed into the trial pool on March 16, 2001, or as soon

thereafter as all dispositive motions are decided.